UNITED STATES of America,
Plaintiff–Appellee,

v.

Juan NUNEZ, Defendant–Appellant.

No. 87–1950.

United States Court of Appeals,
Tenth Circuit.

June 20, 1989.

Dan B. Fahrney, Lakewood, Colo., for defendant-appellant.

William D. Welch and Kathryn Meyer, Asst. U.S. Attys., Denver, Colo. (Michael J. Norton, Acting U.S. Attorney, D. Colo., with them on the brief), Mountain States Drug Task Force, Denver, Colo., for plaintiff-appellee.

Before McKAY and McWILLIAMS, Circuit Judges, and BROWN, District Judge.*

* Honorable Wesley E. Brown, United States District Judge for the District of Kansas, sitting by designation.

**1476**

McWILLIAMS, Circuit Judge.

In a thirty-three count superseding indictment, twenty defendants were charged in the first count with conspiring among themselves, and with others, to distribute heroin and to possess heroin with an intent to distribute, in violation of 21 U.S.C. § 841(a)(1). The objective of their conspiracy was to import heroin from outside the State of Colorado into Colorado and to then distribute and sell it within the state. The points of sale included, but were not limited to, the State Penitentiary at Canon City, Colorado. In the remaining thirty-two counts certain defendants were charged with the actual distribution of heroin, and other defendants were charged with the unlawful use of the telephone to facilitate such distribution and possession of heroin, in violation of 21 U.S.C. § 843(b) and 18 U.S.C. § 2.

Thirteen of the original twenty defendants either pled guilty or were dismissed from the case prior to trial, with the remaining seven going to trial. One of these seven pled guilty during the trial. Of the remaining six, the jury acquitted three defendants. The remaining three defendants were convicted on certain of the charges and they now appeal their respective convictions and the sentences imposed thereon.[1]

Each of the three defendant-appellants has prosecuted his or her appeal separately. Each has his or her own counsel who has filed a separate brief raising related, though not completely identical, issues, and each appeal was separately argued. There has been no order of consolidation of these three appeals. Accordingly, each will be addressed by separate opinion, although there will be some cross-reference between the cases.

We are here concerned with the appeal of Juan "Blackie" Nunez, hereinafter referred to as Blackie. Blackie, an inmate in the Colorado State Penitentiary at Canon City, Colorado, for the relevant period of time

was convicted on Count 1, the conspiracy charge, and sentenced to twelve years imprisonment on that count, with the sentence to commence after Blackie completed the state sentence which he was then serving. He was also convicted on Counts 16, 19, and 24, and sentenced to four years imprisonment on these counts to be served concurrently with the twelve-year sentence imposed on Count 1. Counts 16, 19, and 24, charged Blackie with the use of the telephone to facilitate drug distribution and possession, with each count based on a separate use of the telephone.

The principal matter raised on appeal by Blackie is that his constitutional rights were violated when he was banished from the courtroom on the fourth day of a twelve-day trial because of obstreperous and disruptive conduct, and, the somewhat related issue, that he was denied his right to defend, *pro se.*

From the outset Blackie was represented by court-appointed counsel. There is no indication that he was dissatisfied with the services of his appointed counsel prior to trial. On the first day of the trial, Blackie, in the presence of the jury, interrupted the prosecutor who was interrogating one of the government's witnesses by calling the witness a liar. The district judge told Blackie to "stop that," and added that "if there is one more outburst you will be removed from the courtroom." Later, on that same day, the district judge, outside the presence of the jury, advised Blackie that he would "have to control himself," to which Blackie replied, "Excuse me for my unpardonable outburst, your Honor."

On the second day of the trial, while the prosecutor was examining a witness, Blackie began talking in a loud voice and gesturing with his hands. The district judge advised Blackie that he was disturbing the proceedings and had him removed from the courtroom.

**1.** The seven defendants who stood trial were Juan "Blackie" Nunez, Corky Nunez, Anna Irene Martinez, Richard Nunez, Ellen Nunez, Christine Benavidez, and Charles Nunez. Charles Nunez pled guilty during the trial. Christine

Benavidez, Ellen Nunez, and Richard Nunez were acquitted on all counts. Juan "Blackie" Nunez, Corky Nunez, and Anna Irene Martinez were each convicted on several counts, and they now appeal their respective convictions.

On the third day of the trial Blackie was brought into court outside the presence of the jury and was advised by the district judge that he would be permitted to return to the courtroom for his trial, but that if there was "any further outburst you will be excluded from the courtroom for the rest of the trial." Blackie stated that he "understood." On that occasion Blackie also stated that he didn't think he could "receive an impartial and unbiased trial" because the district judge was prejudiced against him, and, for the first time, he indicated displeasure with the performance of his counsel. The district judge denied any partiality on his part and at the same time refused Blackie's request to discharge his counsel.[2] By way of response, Blackie asked to be excused from the courtroom, which he was.

At noon on the third day of the trial, the district judge instructed a marshal to inquire of Blackie concerning his desire to return to the courtroom on a promise to not cause any further disruptions. The marshal reported back that Blackie refused to answer.

On the fourth day of the trial Blackie was returned to court and in the absence of the jury he reiterated his desire for different counsel. The request was denied. However, Blackie, on his promise to behave, was permitted to remain in the courtroom and the jury was returned to the courtroom. Only moments later, Blackie started to interrupt and the district judge stated, "That's it. You are removed from the courtroom," to which Blackie replied that he didn't want to remain in a courtroom where "burlesque" and "charades" were taking place. Blackie was then removed from the courtroom for the balance of his trial, though his court appointed counsel, with whom he was dissatisfied, remained and participated in the trial to the end.

On appeal, Blackie, with counsel other than his trial counsel, argues that his Fifth and Sixth Amendment rights were violated by his banishment from his trial. Specifically, it is argued that by his exclusion from the courtroom, Blackie was denied his Fifth Amendment right to due process of law, and that he was denied his Sixth Amendment right to confront the government's witnesses and to testify in his own behalf. Blackie also asserts that, all things considered, he was denied his Sixth Amendment right to the effective assistance of counsel. We are not persuaded.

In removing Blackie from the courtroom, the district court relied on Fed.R.Crim.P. 43(b)(2), which reads as follows:

(b) Continued presence not required. The further progress of the trial to and including the return of the verdict shall not be prevented and the defendant shall be considered to have waived the right to be present whenever a defendant initially present. . . .

. . . .

(2) after being warned by the court that disruptive conduct will cause the removal of the defendant from the courtroom, persists in conduct which is such as to justify exclusion from the courtroom.

■ It is agreed that a defendant in a criminal proceeding can lose his right to be present at trial, if, following a judge's warning that he will be removed if his disruptive behavior continues, he thereafter persists in conducting himself in such a disruptive manner that his trial cannot proceed if he remains in the courtroom. *Illinois v. Allen,* 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970).

■ In *Allen,* the Supreme Court held that there were three constitutionally permissible avenues for dealing with an obstreperous defendant: (1) have him bound and gagged but remain in open court; (2) civil or criminal contempt; and (3) remove him from the courtroom and continue the trial "until the defendant promises to conduct himself properly." *Id.* at 344, 90 S.Ct. at 1061. Counsel would read the quoted

---

**2.** Appointed counsel also advised the district court that he had been instructed by Blackie to present "no defense," and the district court, in turn, instructed counsel to defend "to the best of his ability."

1478

language to mean that when Blackie was excluded on the fourth day of his trial, he should have thereafter been brought back at least once a day to ascertain whether he would promise to behave properly and if he did so promise, he should then have been allowed to stay in the courtroom unless, and until, his next outbreak, *ad infinitum. Allen* contains no such requirement.

As the Fourth Circuit has observed, "A court should, of course, vigilantly protect a defendant's constitutional rights, but it was never intended that any of these rights be used as a ploy to frustrate the orderly procedures of a court in the administration of justice." *United States v. Lawrence,* 605 F.2d 1321, 1325 (4th Cir.1979), *cert. denied,* 444 U.S. 1084, 100 S.Ct. 1041, 62 L.Ed.2d 770 (1980). *See also United States v. Gipson,* 693 F.2d 109 (10th Cir. 1982) ("The right to retain counsel of one's choice may not 'be insisted upon in a manner that will obstruct an orderly procedure in courts of justice, and deprive such courts of the exercise of their inherent powers to control the same,'"); *United States v. Hack,* 782 F.2d 862 (10th Cir.1986), *cert. denied, Owens v. United States,* 476 U.S. 1184, 106 S.Ct. 2921, 91 L.Ed.2d 549 (1986) (general prohibition against use of shackles inappropriate to insure orderly progress of trial).

■ Furthermore, the right to testify is not absolute, *United States v. Panza,* 612 F.2d 432, 438 (9th Cir.1979), and may be waived by "contumacious conduct." *United States v. Ives,* 504 F.2d 935, 941 (9th Cir.1974), vacated 421 U.S. 944, 95 S.Ct. 1671, 44 L.Ed.2d 97 (1975), reinstated in relevant part and vacated in part, 547 F.2d 1100 (9th Cir.1976), *cert. denied,* 429 U.S. 1103, 97 S.Ct. 1130, 51 L.Ed.2d 554 (1977). The right to confront witnesses and the Fifth Amendment right to due process may also be waived. *United States v. Rouco,* 765 F.2d 983 (11th Cir.1985).

■ In the instant case, Blackie was given a warning on the first day of his trial. On the second day of the trial, when Blackie interrupted the trial with loud talk and gesturing, he was removed from the courtroom. On the third day of the trial, Black-ie was returned to the courtroom, and the district judge advised him that he would be permitted to remain, but that if there was any further "outburst," he would be excluded from the courtroom for the rest of the trial. Blackie declined the offer and asked to be excused, and was. At noon on the third day of the trial, the district judge instructed the marshal to inquire whether Blackie wanted to return to the courtroom, and Blackie refused to talk. On the fourth day of the trial, Blackie was allowed to return to the courtroom, but when he interrupted the proceedings again by injecting himself into the proceedings, he was banished for good. And at that time Blackie himself indicated that he did not want to be any part of a "burlesque" or "charade," and he did not thereafter indicate any desire to return or testify. The district judge, in our reading of the record, was slow to anger and we find no error in his handling of this matter. Blackie's constitutional rights were adequately protected. In the final analysis, it boiled down to whether Blackie, or the district judge, was going to conduct the trial.

■ Intertwined with his banishment from the courtroom is Blackie's further argument that he was denied his Sixth Amendment right to have his appointed counsel removed from the case and be allowed to conduct his own defense, *pro se,* or be given different counsel. The district judge denied his request and, under the circumstances, we find no error.

We are not unmindful of *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). There the Supreme Court held that the Sixth Amendment, as applied to States by the Fourteenth Amendment, guarantees that a defendant in a state criminal trial has an independent constitutional right of self representation. In *Faretta,* however, the defendant requested that he be allowed to represent himself "[w]ell before the date of the trial." In our case, the trial was in its third day before Blackie indicated any dissatisfaction with his court appointed counsel. At that juncture, it was too late to bring in new counsel, and if Blackie's request to proceed *pro*

*se* had been granted, and he had later been removed from the courtroom, as he was, he would have been unrepresented. The district court, confronted with those circumstances, did not err in refusing Blackie's request to discharge his appointed counsel and proceed *pro se. See Sapienza v. Vincent,* 534 F.2d 1007 (2d Cir.1976) where the Second Circuit, after *Faretta,* adhered to an earlier decision of that court which held that once a trial had begun and the defendant is represented by counsel, the defendant's right to discharge his lawyer and to represent himself is "sharply curtailed."[3] *See also Lawrence,* 605 F.2d at 1324–25.

As stated above, Blackie was convicted on Counts 16, 19, and 24, as well as on the conspiracy charge contained in Count 1. In Count 16 Blackie was charged with using the telephone on or about May 30, 1985, to facilitate a heroin distribution; in Count 19 he was charged with using the telephone on June 1, 1985, to facilitate a heroin distribution; and in Count 24 he was charged with using the telephone on June 9, 1985, to facilitate a drug transaction. Evidence at trial indicated that on each of these three dates Blackie initiated a telephone call from the state penitentiary in Canon City, Colorado, to his brother, Antonio "Pic" Nunez, who resided in Westminster, Colorado.[4] On May 30, 1985, Blackie spoke with "Pic"; on June 1, 1985, he spoke with Sharon Nunez, "Pic's" wife; and on June 9, 1985, Blackie spoke with "Pic" and also with his (Blackie's) daughter, Louise Charlettie Nunez Lee.

The government had obtained an order to intercept messages coming into the phone at "Pic's" residence in Westminster, and when Blackie called "Pic's" home in Westminster from the state penitentiary his calls were intercepted.

**3.** We are not persuaded by Blackie's related contention that he was denied his Sixth Amendment right to the effective assistance of counsel. Counsel did about as well as could be expected, given the circumstances. *See Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

**4.** "Pic" Nunez was the central figure or "hub" in this drug operation.

In connection with his convictions on Counts 16, 19, and 24, counsel argues here that the order authorizing a wiretap of "Pic's" residence violated Blackie's constitutional rights, and that his conviction on those counts should be reversed. We do not agree. The validity of the wiretap is discussed more fully in the related appeal of Blackie's brother and co-defendant, *United States v. Corky Nunez,* 877 F.2d 1470 (1989).

Additionally, Blackie's contention that error was committed when the district court denied his motion for a severance of counts and defendants on the ground that any conspiracy relating to the state penitentiary was separate and distinct from any conspiracy to distribute heroin outside the penitentiary is without merit. The issue of single conspiracy vis-a-vis two conspiracies is also discussed in the appeal of *United States v. Corky Nunez,* 877 F.2d 1470 (1989).[5]

Judgment affirmed.

McKAY, Circuit Judge, dissenting in part:

I must dissent from that portion of the court's opinion that depends on its conclusion that there was sufficient evidence to prove a single conspiracy. In addition to the reasons set out in my dissents in *United States v. Heath,* 580 F.2d 1011 (1978); *United States v. Watson,* 594 F.2d 1330 (1979); and *United States v. Dickey,* 736 F.2d 571 (1984), I must add my observation that when it comes to the evidence showing the rim that connects the spokes (*Kotteakos v. United States,* 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946); and *United States v. Butler,* 494 F.2d 1246 (10th Cir. 1974)), in my view we are not faithfully applying the mandate of *Anderson v. Liberty Lobby,* 477 U.S. 242, 254, 106 S.Ct.

**5.** Blackie, as well as Martinez, suggests that the indictment failed to provide adequate notice. However, under the standard of *United States v. Savaiano,* 843 F.2d 1280, 1294 (10th Cir.1988) and *United States v. Smith,* 692 F.2d 693, 696 (10th Cir.1982), defendants had sufficient notice.

2505, 2513, 91 L.Ed.2d 202 (1986), to view the evidence "through the prism of the substantive evidentiary burden."