**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 16 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

DORA WILLIAMS,

    Defendant-Appellant.

No. 98-2239

(D.C. No. CR-95-15-LH)
(D.N.M.)

**ORDER AND JUDGMENT** *

Before **SEYMOUR,** Chief Judge, **TACHA** , and **BRISCOE,** Circuit Judges.

Dora Williams appeals her conviction of possession of a controlled substance with intent to distribute in violation of 21 U.S.C. § 841(b)(1)(A). Prior to trial, the district court denied Williams' request to fire her attorney and to proceed pro se. Because Williams clearly and unequivocally asserted her intention to represent herself in a timely fashion, we conclude that the denial of her request violated the Sixth Amendment. Accordingly, we reverse Williams' conviction and remand the case for a new trial.

---

*This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

## I.

This case is before us for the second time. In 1995, Williams was convicted of one count of possession of cocaine with intent to distribute, as well as aiding and abetting, in violation of 21 U.S.C. § 841 and 18 U.S.C. § 2. Record on Appeal ("ROA"), Docs. 20, 59. On appeal, we concluded that the record raised a "genuine, reasonable doubt" about Williams' competence. United States v. Williams, 113 F.3d 1155, 1160 (10th Cir. 1997). We noted that on the first day of trial Williams (1) spoke "rapidly and excitedly, bombard[ing] the court with requests," id. at 1157; (2) apparently was crying uncontrollably and "just want[ed] to leave," id. at 1158; (3) was, in the words of the district court, "excitable and prone to making outbursts and interrupting the proceedings," id. at 1158; see also id. n.2 (reitering that Williams "persistently interrupted" the court's attempts to explain courtroom procedure, and ignored a "repeated admonition not to interrupt but to trust her attorney"); and (4) threatened to leave the courtroom because she couldn't sit and "watch [her] rights be violated." Id. at 1158. On the second day of trial, after failing to take a prescribed antidepressant, Williams "proceeded to testify, interrupting questions, her responses divagating from the questions into argumentative or self-pitying statements, disregarding the court's repeated warnings." Id. at 1157-58; see also id. at 1158 ("To say that Ms. Williams was out of control during the second day

of the proceeding euphemizes the record."). During a subsequent motions hearing, Williams again appeared "hysterical" and spoke in a manner that made it impossible for the court reporter to record her statements. Id. at 1158-59. Based on this pattern of behavior, we vacated Williams' conviction and remanded the case to the district court to evaluate Williams' competence to stand trial. Id. at 1161.

On remand, the district court duly ordered a competency evaluation. ROA, Doc. 156. After reviewing the results of the evaluation, the district court concluded that a "mental disease or defect" rendered Williams "unable to assist properly in her defense." Id., Doc. 162, at 1. Citing 18 U.S.C. § 4241, the court committed Williams to the custody of the Attorney General for hospitalization and treatment. Id. The district court ordered the director of the hospital designated by the Attorney General to notify the court if he determined that Williams "has recovered to such an extent that she is able to understand the nature and consequences of the proceedings against her and to assist properly in her defense." Id. at 1-2. The hospital director provided such notice a few months later, and the district court determined that Williams had indeed recovered and was competent to stand trial. Id., Doc. 167.

Williams' second trial commenced on August 25, 1998. On August 24, prior to voir dire, Ron Koch, Williams' attorney, informed the district court that

3

Williams wished to proceed pro se:

> [A]s you know, Ms. Williams had expressed a strong interest during the first trial to represent herself. She continues to have the opinion that she's able to represent herself probably more competently than counsel. She has felt from the beginning that counsel that have been assigned to her have been thrust upon her against her wishes. She has terminated my services on repeated occasions and would simply ask that I step off the case, that she has never understood why the Court wouldn't allow me to step off the case and let her represent herself. That was an issue in the prior trial, and it's certainly an issue in this trial.

Id., Vol. IV, at 7. The district court did not immediately respond to Williams' request. A few minutes later, Assistant United States Attorney David Williams sought clarification:

> MR. WILLIAMS: If I may, Your Honor, I'm not sure I followed the one thing that the Court said earlier. Does this defendant appear pro se with respect to anything to do in this case? Because if she does, I think that there are certain findings the Court ought [to] make under F[a]retta v. California. And what we would ask simply is that if the Court's going to let her appear, that alters the status legally, I believe, with respect to Mr. Koch because I think the law is to the effect that one is not entitled to both appear personally, defend a case himself, and have a court-[ap]pointed attorney. There have been some instances in which the court has appointed something called a stand-by attorney . . . .
>
> THE COURT: Mr. Koch is counsel for the defendant. I have appointed Mr. Koch. He has not – he has not withdrawn. He is still counsel for the defendant, and he is acting as her counsel during this trial until he is removed as counsel.

Id. at 10-11. The government subsequently objected "to the defendant talking unless asked a direct question because the Court's already ruled she is

4

represented." Id. at 14. The following dialogue ensued:

> MR. KOCH: Your Honor, the Court has ruled that she cannot represent herself –
>
> THE COURT: Yes.
>
> MR. KOCH: – denying that motion again for this trial.
>
> THE DEFENDANT: I do have a right to help him.
>
> THE COURT: You can talk to your attorney. You can talk to your attorney and tell him of your concerns about any legal or factual issues that come up during the trial, but he must make the Court aware of those. He must rise and tell the Court and explain your position, and he has done so this morning on each occasion. It's unnecessary for you to do that as well. He is a very good lawyer, and you tell him, and he will take care of it, okay?

Id.; see also id., Vol. VI, at 2-3 (indicating that the district court subsequently told Williams that it was "not going to have you talk on the record" but Williams could speak to Koch and the court would "put it on the record with the attorney"). Two days later, the jury convicted Williams of the charged offense. Id., Vol. I, Doc. 178; Vol. VI at 4-6. The district court sentenced Williams to a prison term of 210 months. Id., Vol. VI, at 16-17.

II.

The sole issue in this appeal is whether the district court denied Williams her constitutional right to proceed without an attorney. When evaluating such a claim, we review the district court's finding of historical facts for clear error. United States v. Boigegrain, 155 F.3d 1181, 1185 (10th Cir. 1998), cert. denied

5

119 S. Ct. 828 (1999). We review de novo whether a constitutional violation actually occurred. Id.; cf. United States v. Taylor, 113 F.3d 1136, 1140 (10th Cir. 1997) (stating that "[w]e review de novo the question of whether a waiver of counsel is voluntary, knowing, and intelligent" under the Sixth Amendment).

A criminal defendant has a constitutional and a statutory right to self-representation. The former is expressly recognized in Faretta v. California, 422 U.S. 806, 834-36 (1975), while the latter derives from 28 U.S.C. § 1654. When exercised, the right of self-representation "usually increases the likelihood of a trial outcome unfavorable to the defendant." McKaskle v. Wiggins, 465 U.S. 168, 177 n.8 (1984). As a result, "its denial is not amenable to 'harmless error' analysis. The right is either respected or denied; its deprivation cannot be harmless." Id.; accord United States v. Baker, 84 F.3d 1263, 1264 (10th Cir. 1996). To invoke the right, a defendant must meet several requirements. First, the defendant must "clearly and unequivocally" assert his intention to represent himself. United States v. Floyd, 81 F.3d 1517, 1527 (10th Cir. 1996); United States v. Reddeck, 22 F.3d 1504, 1510 (10th Cir. 1994). Second, the defendant must make this assertion in a timely fashion. United States v. Nunez, 877 F.2d 1475, 1478-79 (10th Cir. 1989). Third, the defendant must "knowingly and intelligently" relinquish the benefits of representation by counsel. Boigegrain, 155 F.3d at 1185; United States v. Treff, 924 F.2d 975, 978 (10th Cir. 1991). To

6

ensure that the defendant's waiver is knowing and intelligent, the trial court should "conduct a thorough and comprehensive formal inquiry of the defendant on the record to demonstrate that the defendant is aware of the nature of the charges, the range of allowable punishments and possible defenses, and is fully informed of the risks of proceeding pro se." United States v. Willie, 941 F.2d 1384, 1388 (10th Cir. 1991); accord United States v. Padilla, 819 F.2d 952, 959 (10th Cir. 1987).

Even if properly invoked, "a court may terminate the right to self-representation, or the defendant may waive it[.]" Munkus v. Furlong, 170 F.3d 980, 984 (10th Cir. 1999). For example, "[t]he right of self-representation is not a license to abuse the dignity of the courtroom." Faretta, 422 U.S. at 834 n.46; see generally Illinois v. Allen, 397 U.S. 337, 341 (1970) (stating that a defendant may forfeit his right to be present at trial "if, after he has been warned by the judge that he will be removed if he continues his disruptive behavior, he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom"). Accordingly, a trial judge may "terminate self-representation by a defendant who deliberately engages in serious and obstructionist misconduct." Faretta, 422 U.S. at 834 n. 46; see also McKaskle, 465 U.S. at 173 (recognizing that an accused has a constitutional right to conduct his own defense provided

7

that he "is able and willing to abide by rules of procedure and courtroom protocol").

Even though the trial court in this case denied Williams' request to proceed pro se without comment, the government argues that the court's decision was justified under Faretta and McKaskle. The government maintains that the "extensive record" available to the district court left "no doubt" about Williams' inability to respect the dignity of the courtroom. Appellee's Answer Brief at 9. The government likewise asserts that "[a]lthough the district court did not make findings regarding the obvious – that Williams was simply unable to control herself to the extent that she would be able to abide by courtroom procedure and protocol – an examination of the record provides a clear basis for affirmance." Id. at 13.

This argument misses the mark. As an initial matter, it bears emphasis that the district court cited neither Faretta nor McKaskle as a basis for its decision – even after the government brought Faretta to the court's attention. Cf. United States v. McKinley, 58 F.3d 1475, 1482 (10th Cir. 1995) (relying in part on a similar omission as proof that the district court deprived the defendant of his right to self-representation). In any event, the government's suggestion that Williams was unwilling to follow courtroom protocol is premised almost exclusively on her bizarre behavior during the initial trial. See Appellee's

8

Answer Brief at 9-11. This behavior was attributable to Williams' apparent incompetence, not conscious disrespect for courtroom procedures: "Although Ms. Williams' conduct included outbursts, interruptions of the attorneys, and defiance of the district court's instructions, we emphasize that we find that the record raises a genuine, reasonable doubt about her competency to stand trial and not that she merely engaged in obstructionism during the proceedings." Williams , 113 F.3d at 1160. Our observation in Williams was confirmed by subsequent proceedings in the district court, which established that Williams suffered from a "mental disease or defect." Only after several months of hospitalization and treatment was Williams declared competent to stand trial.

None of Williams' conduct after she was deemed competent establishes that she necessarily would have abused the dignity of the courtroom through self-representation. The government contends that two interjections by Williams prior to her second trial provide a sound basis for the district court's order. They do not. On the morning of August 24, Koch inquired whether Williams was being tried on the original indictment or a superseding indictment. The district court determined that the charge in both indictments was the same, and the government agreed to dismiss the superseding indictment and proceed on the original indictment. ROA, Vol. IV, at 7-10. Williams spoke twice during this

9

exchange. [1]  Williams' statements are admittedly inaccurate and not those of a

trained lawyer.  But a defendant's "legal prowess" is "not relevant to whether he

---

[1]  THE DEFENDANT:  The superseding indictment was dismissed in magistrate court, was Judge Svet.  I was brought here for arrangement, and the superseding indictment Judge Svet found did not pertain to me, that it – he vacated the draft on it.  So therefore the superseding indictment does not exist in my case.  I only want that acknowledged in open court because the superseding indictment was dismissed in September – on September the --September the 17th by magistrate court.  The findings was that the superseding indictment did not pertain to Dora Williams.  Therefore, he vacated the draft.

THE COURT:  Counsel for the government want to respond to that?

MR. WILLIAMS:  The Court's observation is accurate, that there is no difference at all between the original indictment and the superseding indictment insofar as the defendant on trial is concerned.  The language is identical.  The proceeding, I think, in magistrate court was that there was no need to arraign or to continue any process on the superseding indictment with respect to Ms. Williams because the superseding indictment changed nothing with respect to her.  If the Court – if the trial was on the original indictment, I don't have any problem if the Court wants to say that the trial that we're going to conduct today is on the same indictment that was before the court of appeals.

THE DEFENDANT:  Sir, for the record, because it's on record, the magistrate court found that the superseding indictment had nothing to do, did not pertain to Dora Williams, had nothing to do with Dora Williams.  All I want is this to go on record that I spoke that this was a fact, I have it in writing, that is a fact.  I have also the calendar that is a fact that the findings did not pertain to Dora Williams.

ROA, Vol. IV, at 8-9.

10

should be allowed to represent himself." McKinley, 58 F.3d at 1481; see also Godinez v. Moran, 509 U.S. 389, 399-400 (1993) (quoting Faretta for the proposition that a defendant choosing self-representation must do so "competently and intelligently," but that the defendant's "technical legal knowledge" is "not relevant" to the determination of his competency to waive the right to counsel); Baker, 84 F.3d at 1267 (holding that "a court determination that an accused lacks expertise or professional capabilities cannot justify denying the right of self-representation") (citation omitted). In the same vein, "a defendant's mere incompetency in self-representation is not a sufficient basis for inferring a desire to delay and disrupt the proceedings." McKinley, 58 F.3d at 1482.

Further, even if the district court did believe that Williams was prone to outbursts or other disruptive behavior, one solution was to appoint standby counsel – not to prospectively deny Williams her right to self-representation. As we explained in Padilla, "once a defendant has declared his desire to proceed pro se, appointment of standby counsel is a preferred, though not mandatory, practice." 819 F.2d at 959. The Supreme Court made clear in Faretta that a trial court "may – even over objection by the accused – appoint a 'standby counsel' to aid the accused if and when the accused requests help, and to be available to represent the accused in the event that termination of the defendant's self-representation is necessary." 422 U.S. at 834 n.46; see also McKaskle, 465 U.S.

11

at 184 (affirming that a trial court can appoint standby counsel "to explain and enforce basic rules of courtroom protocol").  Once it satisfied itself that Williams' request to relinquish the benefits of counsel was "knowing and intelligent," the district court could have warned Williams that outbursts in the courtroom would not be tolerated [2] and that sustained interruptions or other misconduct would result in the termination of her right to self-representation. Koch, who was already present and familiar with the case, could have been appointed as standby counsel to assist Williams or to present Williams' defense if she failed to comply with the court's directive.  Cf. United States v. Brock, 159 F.3d 1077, 1078-81 (7th Cir. 1998) (approving the termination of an obstructionist defendant's right to self-representation after the trial court (1) appointed standby counsel, (2) informed the defendant of the risks involved in proceeding pro se, and (3) repeatedly cited the defendant for contempt).  In sum,

---

[2] It appears that the district court did, in fact, issue such a warning to Williams.  On the morning of August 24, the court indicated that it

> wanted to make an observation in view of my experience in this case with the defendant, and Mr. Koch has advised that the defendant is appearing personally, . . . and that makes me think it important to advise Ms. Williams that repeated [interruptions] during the trial will not be tolerated.  And the court has made arrangements in the event that that occurs for the defendant to observe the trial from another location.

ROA, Vol. IV, at 6.

12

to paraphrase the Second Circuit,

> [g]iven [Williams'] inexperience with the rules of evidence and with courtroom protocol, a certain amount of confusion, delay, even irregularity, would be expected. But this sort of "disruption" accompanies pro se representation generally; it is a price the Framers of the Sixth Amendment . . . thought well worth paying. . . . If, on the other hand, the judge thought that [Williams] was likely to engage in deliberately disruptive or obstreperous conduct, the measure he chose was far too drastic. A potentially unruly, disrespectful, or overly passionate pro se may be clearly and firmly forewarned that he will lose his right of self-representation if he obstructs the trial or creates "a scene." But the mere possibility of such disruption . . . is not a sufficient reason for denying the right of self-representation at the start.

O'Reilly v. New York Times Co. , 692 F.2d 863, 869 n.7 (2d Cir. 1982) (citations omitted).

Relying in part on our decision in Nunez, the government also contends that Williams' request to proceed pro se was untimely. The government acknowledges that the defendant in Nunez did not assert his right to self-representation until the trial was well underway, see 877 F.2d at 1478-79, but argues that "there is nothing in the court's opinion which indicates that a request made the morning of trial is timely." Appellee's Answer Brief at 18. The government then notes that almost four years passed between Williams' arrest and her request to represent herself. During that time Williams participated in a trial and an appeal, was committed to the custody of the Attorney General for treatment, and utilized four different attorneys (plus a fifth for this appeal). The

13

government further notes that Koch filed several motions to withdraw prior to August 24, 1998, and that none of these motions contained a request for self-representation.

Once again, the government's argument is unpersuasive. The government cites no authority for the proposition that a request for self-representation made prior to trial is untimely. Our cases suggest that the contrary is true: If unequivocally "demanded before trial," the right to self-representation is "unqualified." See United States v. Beers, 189 F.3d 1297, 1303 (10th Cir. 1999) (quoting United States v. Mayes, 917 F.2d 457, 462 (10th Cir. 1990)). [3] Only when the right is not asserted prior to trial does it "becom[e] discretionary with the trial court whether to allow the defendant to proceed pro se." Mayes, 917

---

[3] Other circuits similarly recognize that a defendant's ability to assert the right of self-representation is unqualified when the request is made before trial. See United States v. Walker, 142 F.3d 103, 108 (2d Cir.) ("If the defendant asks to proceed pro se before the trial commences this right is absolute, and his request must be granted."), cert. denied, 119 S. Ct. 219 (1998); United States v. Noah, 130 F.3d 490, 497 (1st Cir. 1997) ("[A]lthough a criminal defendant's right to serve as his own attorney is absolute if invoked clearly and distinctly prior to the beginning of his trial, the right of self-representation becomes qualified once trial is under way."); United States v. Webster, 84 F.3d 1056, 1063 n.3 (8th Cir. 1996) ("[T]he right to self-representation is unqualified only if demanded before trial.") (citation omitted); see also Moore v. Calderon, 108 F.3d 261, 264 (9th Cir. 1997) (establishing "a bright-line rule for the timeliness of Faretta requests: a request is timely if made before the jury is empaneled, unless it is shown to be a tactic to secure delay"); Chapman v. United States, 553 F.2d 886, 887 (5th Cir. 1977) ("[A] demand for self-representation must be honored as timely if made before the jury is selected, absent an affirmative showing that it was a tactic to secure delay.").

F.2d at 462 (citation omitted).  When exercising this discretion, the trial court must "balance whatever prejudice is alleged by the defense against such factors as disruption of the proceedings, inconvenience and delay, and possible confusion of the jury."  Id. (citation omitted).  The trial court should also consider "the reason for the request [and] the quality of the counsel representing the party."  Id. (quoting Sapienza v. Vincent, 534 F.2d 1007, 1010 (2d Cir. 1976)).  Our decision in Nunez, in which we affirmed the denial of a request for self-representation made on the third day of trial, is consistent with these criteria. See 877 F.2d at 1478-79 (citing Sapienza and another case in which the defendant requested permission to represent himself after the jury had been selected and trial had commenced).  In the instant case, there is no indication that Williams' request to proceed pro se was merely a tactic to secure delay, and all parties agree that she attempted to assert her right of self-representation prior to trial.  That request was timely and should have been addressed by the district court.

REVERSED and REMANDED for a new trial.

Entered for the Court

Mary Beck Briscoe
Circuit Judge

15