FILED
United States Court of Appeals
Tenth Circuit

June 1, 2022

Christopher M. Wolpert
Clerk of Court

## UNITED STATES COURT OF APPEALS

### FOR THE TENTH CIRCUIT

_____

EARNEST EUGENE PADILLOW,

    Petitioner - Appellant,

v.

SCOTT CROW, Interim Director,
Oklahoma Department of Corrections,

    Respondent - Appellee.

No. 21-5064
(D.C. No. 4:18-CV-00122-TCK-CDL)
(N.D. Okla.)

_____

### ORDER DENYING CERTIFICATE OF APPEALABILITY[*]

_____

Before **MATHESON**, **KELLY**, and **CARSON**, Circuit Judges.

_____

Earnest Eugene Padillow, an Oklahoma state prisoner appearing pro se, seeks a

certificate of appealability (COA) under 28 U.S.C. § 2253(c)(1)(A) to appeal the district

court's denial of his application for habeas relief under 28 U.S.C. § 2254.  He also

requests to proceed *in forma pauperis* ("*ifp*").  We deny his request for a COA and

dismiss this matter and we deny his *ifp* request.[1]

---

[*] This order is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] Because Mr. Padillow is pro se, we construe his filing liberally, but we do not act as his advocate.  *Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008).

# I. BACKGROUND

## A. *State Court Proceedings*

Mr. Padillow was charged with three counts of first-degree rape and two counts of rape by instrumentation in Tulsa County District Court. A jury convicted him on all counts. On two of the first-degree rape convictions, the court sentenced Mr. Padillow to consecutive life sentences without the possibility of parole. On the remaining convictions, the court imposed consecutive 20-year sentences.

During the trial, shortly before Mr. Padillow was to testify, his attorneys stated outside the jury's presence that Mr. Padillow would not cooperate in preparing his testimony and wanted to represent himself. Mr. Padillow explained that he wanted to recall particular witnesses who had already testified, been subject to cross-examination, and been released by counsel. The trial court denied his request. Once the jury returned, Mr. Padillow stood up as if to walk to the witness stand, but instead attacked his counsel, Mark Cagle, with such force that it broke the chairs at the defense table. Mr. Cagle's co-counsel, Stephen Lee, helped sheriff's deputies separate Mr. Padillow from Mr. Cagle, and Mr. Padillow was removed from the courtroom.

The state trial court judge then made a record in front of the jury that Mr. Padillow's actions constituted a knowing and voluntary waiver of his right to be present and his right to testify. After the defense rested and the jury retired for deliberations, the judge provided a fuller description of Mr. Padillow's attack. The judge stated that although the attack clearly affected the jury, it was equally clear the incident should not cause a mistrial. In support of that conclusion, the trial court observed that the

2

jurors did not become emotional, cry, or even gasp; that Mr. Lee continued to represent

Mr. Padillow effectively, making zealous and thorough closing arguments; and that

neither party referenced the attack during closing arguments.

Mr. Padillow appealed his convictions to the Oklahoma Court of Criminal Appeals

("OCCA"), asserting two relevant errors: (1) his removal from the courtroom during the

trial violated his constitutional right to be present, and (2) his removal also violated his

constitutional right to testify on his own behalf. The OCCA rejected these issues on

appeal and upheld the verdict and sentence.[2]

In March 2016, Mr. Padillow filed a pro se application for post-conviction relief in

the trial court. He raised several issues. First, he alleged that his appellate counsel

rendered ineffective assistance by refusing to raise certain issues on appeal that

Mr. Padillow had suggested. Second, he claimed that his trial attorneys were

constitutionally ineffective in six ways because he failed to:

1. Thoroughly cross-examine a lab technician who testified for the state;

2. Investigate the availability of a video recording of the victim's sexual assault nurse examination;

3. Call one of the state's witnesses as a rebuttal witness;

4. Question Denise Padillow about being coerced by the State to testify;

---

[2] Mr. Padillow asserted two other issues on appeal. First, he argued the trial court erred in finding him in contempt (based on his attack on Mr. Cagle) without first offering him an opportunity to be heard. Second, he argued the documents reflecting the judgment and sentence contained certain technical errors. The OCCA agreed with these assertions and remanded to the trial court for the errors to be corrected. Neither issue is relevant to the instant application for a COA.

5.  Find Regina Johnson, a potential defense witness; and

6.  Request that "crucial evidence" be thrown out, R. Vol. I at 155.

Third, Mr. Padillow claimed the trial court erred in denying Mr. Padillow's motion to dismiss defense counsel.  Finally, Mr. Padillow argued the jury's verdict was not supported by sufficient evidence.  Mr. Padillow sought a hearing on all of these issues and the appointment of counsel.

The trial court denied Mr. Padillow's application for post-conviction relief without a hearing.  It rejected on the merits Mr. Padillow's claim that his appellate counsel was ineffective.  The court held Mr. Padillow's remaining claims were procedurally barred because Mr. Padillow had not raised them on direct appeal.  Finally, the court denied Mr. Padillow's request for counsel.

Mr. Padillow appealed the denial of his application to the OCCA, and the OCCA affirmed on the grounds relied on by the trial court.

## B.  *Federal District Court Proceedings*

Mr. Padillow then filed this action in federal district court, challenging his conviction under 28 U.S.C. § 2254.  His petition for writ of habeas corpus asserted that his conviction and sentence violated federal law on eight grounds:

1.  Appellate counsel was ineffective;

2.  His trial attorneys were ineffective for failing to obtain and introduce a video of a victim's medical examination;

3.  His trial attorneys were ineffective for failing to find Regina Johnson;

4.  The trial court erred in denying Mr. Padillow's pro se motion to dismiss his trial attorneys;

4

5. His trial attorneys were ineffective for failing to object to the admission of "crucial evidence," R. Vol. II at 16;

6. The trial court erred in denying Mr. Padillow's request for an evidentiary hearing on his application for post-conviction relief;

7. The trial court erred in removing Mr. Padillow from the courtroom during closing arguments in violation of the Confrontation Clause; and

8. The trial court erred in denying Mr. Padillow the right to testify.

The district court denied Mr. Padillow's petition and denied a COA. The court first held that because Mr. Padillow did not raise claims 2 through 5 on direct appeal, they were waived under Oklahoma law and therefore procedurally barred. The court noted that Mr. Padillow could overcome the procedural default if he showed cause for the default and actual prejudice as a result of the alleged violation of federal law, or showed that failure to consider the claims would result in a fundamental miscarriage of justice. R. Vol. I at 264 (quoting *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)). The court concluded that Mr. Padillow had made no such showing.

The district court addressed and rejected the merits of Mr. Padillow's remaining claims. First, it held that none of the claimed appellate counsel errors satisfied the ineffective assistance test in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Second, it held that the trial court's decision not to hold an evidentiary hearing on Mr. Padillow's application for post-conviction relief cannot be challenged on habeas review because there is no federal constitutional requirement that states provide a criminal defendant with any particular form of collateral review. Third, it rejected Mr. Padillow's claims that the trial court violated his Sixth Amendment rights by

removing him from the courtroom after he attacked his counsel.  In particular, it held that under *Illinois v. Allen*, 397 U.S. 337, 343 (1970), and in light of Mr. Padillow's "mistreatment of attorneys, attempts to manipulate them and the court, aggressive behavior, and a physical attack during trial . . . the OCCA's findings were [not] contrary to or an unreasonable application of relevant Supreme Court law."  R. Vol. I at 279.

Mr. Padillow requests a COA to appeal portions of the district court's order and has requested leave to proceed in forma pauperis.

## II.  DISCUSSION

### A.  *COA and AEDPA Standards*

Mr. Padillow must obtain a COA for this court to review the district court's denial of his § 2254 application.  *See* 28 U.S.C. § 2253(c)(1)(A).  To receive a COA, the petitioner must make "a substantial showing of the denial of a constitutional right," *id.*, § 2253(c)(2), and must show "that reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further," *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quotations omitted).

When the district court denied his claims on the merits, Mr. Padillow "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.*  When the district court denied a claim on procedural grounds without reaching the underlying constitutional claim, Mr. Padillow must demonstrate "that jurists of reason would find it debatable whether the petition

6

states a valid claim of the denial of a constitutional right *and* . . . whether the district court was correct in its procedural ruling." *Id.*

Our consideration of Mr. Padillow's request for a COA must account for the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which requires "deferential treatment of state court decisions." *Dockins v. Hines*, 374 F.3d 935, 938 (10th Cir. 2004). Under AEDPA, when a state court has adjudicated the merits of a claim, a federal district court cannot grant habeas relief on that claim unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *id.* § 2254(d)(2). When the district court has denied § 2254 habeas relief on the merits, we must determine as part of our COA analysis whether reasonable jurists could debate the court's decision in light of AEDPA deference to the state court. *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).

## B.  *Analysis of COA Application*

Mr. Padillow is not entitled to a COA because reasonable jurists would not debate whether the district court correctly decided the issues he seeks to appeal.

### 1.  **Claims Denied on Procedural Grounds**

The district court denied relief on claims 2 through 5 on procedural grounds. "On habeas review, this court does not address issues that have been defaulted in state court on an independent and adequate state procedural ground, unless the petitioner can demonstrate cause and prejudice or a fundamental miscarriage of justice." *Harmon v.*

7

*Sharp*, 936 F.3d 1044, 1060 (10th Cir. 2019) (quotations omitted).  Here, Mr. Padillow

did not appeal claims 2, 3, 4, or 5.  Accordingly, they were waived under Oklahoma law.[3]

*See Logan v. State*, 293 P.3d 969, 973 (Okla. Crim. App. 2013) ("issues that were not

raised previously on direct appeal, but which could have been raised, are waived for

further review").  The district court noted that Mr. Padillow could overcome this

procedural bar by showing cause and actual prejudice or a fundamental miscarriage of

justice but found Mr. Padillow had not done so.

Mr. Padillow has not presented any meritorious challenge to the district court's

procedural ruling.  He asserts that claims 2, 3, and 5, which allege ineffective assistance

of his trial attorneys, "give validity" to his claims of ineffectiveness of appellate counsel.

Opening Br. & Appl. for COA at 3.  But he fails to show how that assertion concerns the

district court's procedural ruling.  He also asserts that claim 5—that his trial attorneys

were ineffective for failing to object to the admission of "crucial evidence"—constituted

plain error affecting his substantial rights.  *See id.* at 26-28.  But he fails to support that

assertion with any substantive argument.  He does not even address claim 4.  Although

we must construe Mr. Padillow's brief liberally, we "cannot take on the responsibility of

---

[3] The district court acknowledged it was required to undertake a more thorough "adequacy" analysis of Mr. Padillow's waiver of his ineffective assistance claims. R. Vol. I at 263 (quotations omitted).  It held that waiver was an adequate state procedural ground because (1) his trial attorneys and appellate counsel were different, and (2) the claims could have been resolved on the trial record alone.  *See id* at 263-64 (citing *English v. Cody*, 146 F.3d 1257, 1264 (10th Cir. 1998)).  Mr. Padillow has not challenged this conclusion, and reasonable jurists would not debate it.

serving as the litigant's attorney in constructing arguments and searching the record."
*See Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).

Reasonable jurists would not debate the correctness of the district court's procedural ruling. We therefore deny Mr. Padillow's request for a COA on claims 2 through 5.

2. **Claims Denied on the Merits**

The district court denied claims 1, 6, 7, and 8 on the merits. Mr. Padillow seeks a COA to appeal those rulings.

a. *Claim 1 – Ineffective assistance of appellate counsel*

We review Mr. Padillow's ineffective assistance claims under *Strickland v. Washington*, 466 U.S. 668 (1984), which first requires a defendant to show that (1) counsel's performance "fell below an objective standard of reasonableness," *id.* at 688, and (2) the deficient performance prejudiced the defense, *id.* at 692. The deficient performance prong requires a defendant to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *Id.* at 687. The prejudice prong requires a showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

The court reviews ineffective assistance claims with "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (quotations

9

omitted). As *Strickland* noted, "[t]here are countless ways to provide effective assistance in any given case," and "[e]ven the best criminal defense attorneys would not defend a particular client in the same way." *Id.*

The court may address the two *Strickland* components of an ineffective assistance claim in any order, and need not address both if it concludes the defendant has failed to satisfy one. *See id.* at 697. A showing that a defendant's particular legal contention lacks merit necessarily establishes that counsel was not ineffective for failing to raise the issue. *Davis v. Sharp*, 943 F.3d 1290, 1299 (10th Cir. 2019).

Finally, we must review the OCCA's resolution of Mr. Padillow's ineffective assistance claims "through AEDPA's deferential lens." *Frost v. Pryor*, 749 F.3d 1212, 1225 (10th Cir. 2014); *see also Lockett v. Trammell*, 711 F.3d 1218, 1248 (10th Cir. 2013) ("[W]e review [the OCCA's] analysis [of ineffective assistance of counsel claims] under the considerable deference required by *Strickland* itself—in addition to AEDPA deference.").

Mr. Padillow alleged in his habeas petition that he sent his appellate counsel a list of eight issues he wanted to include in his direct appeal:

1. There was insufficient evidence to support the charges;

2. The trial court erred in not determining witnesses requested by Mr. Padillow were unavailable;

3. The trial court wrongfully denied the testimony of Regina Johnson;

4. His trial attorneys never searched for video of the medical examination of one of the victims;

5. His trial attorneys did not attempt to find witness Regina Johnson;

6. During witness examinations, Mr. Padillow's trial attorneys did not ask questions that he claims he had given them;

7. His trial attorneys insisted on a defense theory that Mr. Padillow deemed "a total lie," Opening Br. & Appl. for COA at 17; and

8. His trial attorneys should have withdrawn after Mr. Padillow assaulted them, and the trial court should have appointed him new counsel or allowed him to represent himself.

Mr. Padillow contends his appellate counsel was ineffective because he raised none of these issues on direct appeal. In his Opening Brief and Application for COA, Mr. Padillow has abandoned issues 2 and 3. We address the remaining issues as follows.

      i.   Issue 1 - Sufficiency of the evidence

Mr. Padillow contends his appellate counsel was constitutionally ineffective by failing to assert insufficiency of the evidence. He is entitled to relief on this ground only if "upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324 (1979). This standard "respects the jury's responsibility to weigh the evidence and to draw reasonable inferences from the testimony presented at trial." *Dockins*, 374 F.3d at 939. In addition, the nature of a constitutional sufficiency review by a habeas court is "sharply limited." *Wright v. West*, 505 U.S. 277, 296 (1992). Thus, all of the evidence must be considered in the light most favorable to the prosecution, and the prosecution need not rule out every hypothesis except guilt. *Id.*

We have thoroughly reviewed the trial court record. It contains sufficient victim testimony and corroborating evidence to support a guilty verdict against Mr. Padillow on

11

all counts.  Both victims identified Mr. Padillow as their assailant.  They provided

sufficient detail to satisfy the elements of the crimes charged.  In addition, the victims'

mothers offered corroborating testimony.  A reasonable jury could have found sufficient

proof of guilt beyond a reasonable doubt.  Appellate counsel was thus not constitutionally

ineffective in choosing not to raise this issue.  *See Davis*, 943 F.3d at 1299.

ii.  Issue 4 - Trial attorneys' alleged failure to search for video of the
medical examination

Mr. Padillow argues that appellate counsel should have argued his trial attorneys

were ineffective in failing to present to the jury video of the sexual assault nurse

examination of the victim.  But as the district court noted, one of Mr. Padillow's trial

attorneys cross-examined the nurse responsible for the examination and elicited

inconsistencies between the nurse's written report and the physical evidence contained in

the sealed rape kit.  Having done so, his attorneys decided not to introduce the video,

which would have been cumulative of the nurse's cross-examination.  This decision fell

well within the bounds of sound trial strategy under *Strickland*.

iii.  Issue 5 - Trial attorneys' attempts to find Regina Johnson

Mr. Padillow contends appellate counsel should have asserted ineffective

assistance based on his trial attorneys' failure to find a witness named Regina Johnson.

He alleges Ms. Johnson would have testified that he was alone with one of the victims for

a limited amount of time.  Even assuming this assertion is true, he has failed to show a

reasonable probability that the trial result would have been different if Ms. Johnson had

testified.  *See Strickland*, 466 U.S. at 694.  Indeed, if Ms. Johnson had testified in the way

12

Mr. Padillow claims, she would have helped to establish that he was alone with the victim, which would seem to bolster the prosecution's case. Appellate counsel reasonably chose not to raise this issue.

### iv. Issues 6 and 7 - Defense strategy

Mr. Padillow argues his appellate counsel should have argued that his trial attorneys were ineffective for failing to ask any of 200 questions he says he gave them for witness examinations (issue 6), and that his trial attorneys presented a defense theory that Mr. Padillow deemed "a total lie" (issue 7). Opening Br. & Appl. for COA at 17. Neither claim holds water.

First, Mr. Padillow's asserts that his attorneys declined to use any of his 200 questions, but he has not identified a single proposed question that they failed to ask. How to conduct witness examinations lies at the heart of trial strategy, *see Boyd v. Ward*, 179 F.3d 904, 915 (10th Cir. 1999). Mr. Padillow has not overcome the presumption that the witness examinations conducted by his attorneys were part of a sound trial strategy. *Strickland*, 466 U.S. at 689.

Second, the trial attorneys' defense theory was premised on the testimony of a DNA expert who admitted that there were alternative explanations for the physical evidence presented by the prosecution. Mr. Padillow characterizes this theory as "a lie," but he fails to explain how the defense theory was objectively unreasonable. *See Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000) ("The relevant question is not whether counsel's choices were strategic, but whether they were reasonable.").

13

In short, Mr. Padillow has not overcome the "strong presumption" that his trial attorneys' decisions were sound strategy that fell within a wide range of reasonable professional assistance. *See Strickland*, 466 U.S. at 689. Appellate counsel again reasonably chose not to raise these issues.

v. Issue 8 - Trial attorneys' failure to withdraw after Mr. Padillow's attack and the trial court's denial of new counsel

Mr. Padillow asserts that his appellate counsel should have argued on appeal that his trial attorneys were constitutionally ineffective for failing to withdraw from representation after Mr. Padillow's attack on Mr. Cagle. He cites no supporting authority. Also, the trial transcript completely undermines this argument. It reflects that shortly after the attack, Mr. Lee, his other attorney, performed professionally and competently, including presenting a forceful closing argument on Mr. Padillow's behalf. We reject Mr. Padillow's implicit suggestion that his attorneys "[were] not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *Strickland*, 466 U.S. at 687. The trial transcript demonstrates the opposite.

For substantially the same reasons, we reject Mr. Padillow's related assertion that the trial court erred by not appointing new attorneys after Mr. Padillow attacked Mr. Cagle. A trial court's determination regarding substitution of counsel is subject to the abuse of discretion standard, *see United States v. Mullen*, 32 F.3d 891, 895 (4th Cir. 1994), and Mr. Padillow has not shown that the trial court abused its discretion here.

14

Mr. Padillow has failed to make "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2).  His appellate counsel reasonably chose not to raise this issue.

* * * *

In sum, reasonable jurists would not debate the district court's denial of Mr. Padillow's arguments that his appellate counsel provided ineffective assistance.  *See Miller-El*, 537 U.S. at 336.  We therefore deny a COA on Claim 1.

b.  *Claim 6 – Denial of evidentiary hearing*

Mr. Padillow argues the state trial court should have held an evidentiary hearing on his petition for post-conviction relief.  "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  *Estelle v. McGuire*, 502 U.S. 62, 68 (1991).  The district court rejected Mr. Padillow's claim because "[t]here is no constitutional requirement that states provide a criminal defendant with any form of collateral review."  R. Vol. I at 270-71 (quotations omitted).  We agree.  Mr. Padillow's claim that he was entitled to a hearing in Oklahoma state court is not cognizable on federal habeas review.  *See Sellers v. Ward*, 135 F.3d 1333, 1339 (10th Cir. 1998).  We therefore deny a COA on this claim.

c.  *Claim 7 – Mr. Padillow's removal from the courtroom*

Mr. Padillow claims the trial court violated his Sixth Amendment rights under the Confrontation Clause when it removed him from the courtroom after he assaulted his counsel.  A criminal defendant has a right to be present in the courtroom at every stage of his trial, *Illinois v. Allen*, 397 U.S. 337, 338 (1970), but that right is not absolute, *id.* at

15

343. "[J]udges confronted with disruptive, contumacious, stubbornly defiant defendants must be given sufficient discretion to meet the circumstances of each case." *Id.* "[T]he exclusion of a defendant from a trial proceeding should be considered in light of the whole record." *United States v. Gagnon*, 470 U.S. 522, 526-27 (1985).

Applying the foregoing case law, the OCCA held that the trial court acted well within its discretion under the circumstances and that no Sixth Amendment violation occurred. After undertaking a thorough review of the record of the state court proceedings, the district court concluded that the OCCA's findings were not contrary to or an unreasonable application of relevant Supreme Court case law.

Our own review of the record confirms the conclusions of the district court and the OCCA. Physically attacking one's own counsel in open court is the sort of disruptive behavior contemplated by *Allen* to justify removal. And because the trial court removed him only at the conclusion of the evidence, Mr. Padillow was present at and participated in most of his trial—including voir dire, opening statements, the prosecution's presentation of evidence, and the telephonic testimony of the defense's lone witness. He missed only the jury instruction conference, closing arguments, and the jury's verdict. Mr. Padillow was permitted to be present for his sentencing less than two weeks after the trial concluded, consistent with *Allen*'s direction that "[o]nce lost, the right to be present can . . . be reclaimed as soon as the defendant is willing to conduct himself with the decorum and respect inherent in the concept of courts and judicial proceedings." 397 U.S. at 343.

16

In addition, Mr. Padillow's removal from the courtroom culminated a long history of disruptive conduct. Mr. Padillow repeatedly demonstrated an inability to get along with his lawyers at numerous pre-trial hearings. Indeed, Mr. Padillow went through four attorneys from the Tulsa County public defender's office. Each withdrew due to conflicts with Mr. Padillow or at Mr. Padillow's request. The trial court then appointed Mr. Cagle and Mr. Lee, private attorneys who frequently accepted court appointments when the public defender had a conflict. Months before trial, Mr. Padillow engaged in abusive and threatening conduct toward Mr. Cagle and Mr. Lee when they refused to present a particular theory pressed by Mr. Padillow. His assault on Mr. Cagle capped a long history of failing to get along with his counsel.

Mr. Padillow also continuously vacillated between wanting to represent himself and requesting counsel. Two months before trial, he asked to represent himself. At the conclusion of a hearing on that request, he decided to continue with Mr. Cagle and Mr. Lee. Approximately a month later, he changed his mind again and requested self-representation, which the trial court reluctantly allowed. On the first day of trial in the middle of voir dire, Mr. Padillow requested that Mr. Cagle and Mr. Lee step in to represent him. Finally, after the prosecution presented its case and just before Mr. Padillow was to testify, he again asked to represent himself based on disagreements with his lawyers. The trial court denied this request.[4]

---

[4] The record reflects that the trial court was patient, respectful, and methodical in its efforts to accommodate Mr. Padillow's changing positions on representation and to ensure that his constitutional rights were carefully guarded.

Considering "the whole record," *Gagnon*, 470 U.S. at 527, including Mr. Padillow's assault on an officer of the court and his long history of problematic conduct, we agree that the state trial court acted well within its discretion to remove Mr. Padillow from the courtroom. Reasonable jurists would not debate the district court's resolution of this issue, *Slack*, 529 U.S. at 484, especially under the AEDPA deference accorded to the OCCA's ruling, *see Miller-El*, 537 U.S. at 336. We therefore deny a COA.

d. *Claim 8 – Mr. Padillow's waiver of the right to testify*

Mr. Padillow also claims the trial court violated his Fifth Amendment right to testify by removing him from the courtroom before his testimony. As with the right to be present in the courtroom, the right to testify can be waived through "contumacious conduct." *United States v. Nunez*, 877 F.2d 1475, 1478 (10th Cir. 1989) (quotations omitted). We agree with the OCCA and the district court that by choosing to physically attack his own counsel just seconds before he was to take the witness stand, Mr. Padillow waived his right to testify. Reasonable jurists would not debate this ruling. We therefore deny a COA on this issue.

## III.  CONCLUSION

We deny Mr. Padillow's request for a COA on all issues and dismiss this matter.

We deny his request to proceed *ifp*.

Entered for the Court


Scott M. Matheson, Jr.
Circuit Judge