847 A.2d 1239

**Mohammad BIGLARI**

v.

**STATE of Maryland.**

**No. 2271, Sept. Term, 2002.**

Court of Special Appeals of Maryland.

April 30, 2004.

Nancy S. Forster (Stephen E. Harris, Public Defender on the brief), Baltimore, for Appellant.

Annabelle L. Lisic (J. Joseph Curran, Jr., Atty. Gen., on the brief), Baltimore, for Appellee.

Panel: MURPHY, C.J., THEODORE G. BLOOM, (Retired, specially assigned), JAMES S. GETTY, (Retired, specially assigned), JJ.

MURPHY, Chief Judge.

In the Circuit Court for Baltimore City, a jury convicted Mohammad Biglari, appellant, of first degree murder and related offenses, including use of a handgun in the commission of a crime of violence.[1] The State's evidence was sufficient to establish appellant's guilt, but he argues that he is entitled to a new trial, and presents three questions for our review:

I. Did the trial court err in refusing to appoint an interpreter for Mr. Biglari?

II. Did the trial court err in finding no meritorious reason for discharging counsel?

III. Did the trial court err in having Mr. Biglari removed from the courtroom after discharging his counsel and in continuing the trial *in absentia?*

We answer questions I and II in the negative. Because we answer question III in the affirmative, we must vacate the judgments at issue and remand for a new trial.

## BACKGROUND

Appellant was initially convicted in 1994. He appealed to this Court and was granted a new trial on the ground that the State had been permitted to introduce inadmissible hearsay evidence. Appellant's retrial did not occur until 2002 because he was found incompetent to stand trial, and was committed to the custody of the Department of Health and Mental Hygiene until 2001, when he was found competent to stand trial.

During his 2002 trial, appellant requested the assistance of an interpreter, a request that had been denied during a 1997 proceeding. Appellant also fired his lawyer and proceeded *pro se.* The following transpired when the circuit court directed that appellant call a witness:

The Court: No speeches. Call your next witness.

---

1. Appellant was sentenced to life imprisonment for the first degree murder and to a consecutive sentence of fifteen years' imprisonment for the "use" of a handgun charge.

[Appellant]: My next witness(inaudible). Before that sir, you all (inaudible) wrong here. He (inaudible).

The Court: Excuse me. Call your next witness. Who's your next—give me a name. Who's your next witness?

[Assistant State's Attorney]: May we approach, Your Honor?

The Court: Yeah, come on up. [Appellant] come on up here.

[Appellant]: I want jury understand this.

The Court: Come on up here. No speeches to the jury. Come up.

\* \* \*

(The Jury was excused from the courtroom.)

\* \* \*

The Court [to the Assistant State's Attorney]: *Well, what do you suggest?*

[Assistant State's Attorney]: *My suggestion is if he cannot control himself then he has to be removed.*

The Court: All right. *Okay, I understand.*

[Assistant State's Attorney]: *And I emphatically say that and I've had that done before, but regretfully he'll have to be removed and this trial will continue.*

The Court: *All right. Do you understand what he's saying?*

[Appellant]: *Sir, I understand what he said but this is the order from (inaudible) you're the one in charge.*

The Court: *Well, I am and that's what's going to happen.*

[Appellant]: *Your Honor,—*

The Court: *Excuse me. That is what's going to happen.* What's going to happen now is you're going to call your witness. They're going to get on the witness stand and you're going to have to ask them questions. They'll be cross-examined and you're going to have to keep your questions relevant, that is related to the issues in the case.

And we're not going to be staying here forever listening to you ramble and get off the subject. The subject now is your defense and your next witness. *If you vary from that I'm going to put you in another room with a TV monitor so you can listen to the case. You're going to be removed from the jury if you ramble.* Go ahead.

\* \* \*

The Court: Do you understand that?

[Appellant]: Sir, I—

The Court: Let me give you one more opportunity to bring [your attorney] back so we can have an orderly proceeding—

[Appellant]: No, sir.

\* \* \*

The Court [after listening to appellant complain that the court "won't understand"]: All right. Thank you very much. We're going to bring the jury back and see what happens. Have a seat. Please bring the jury down. *If you can't control yourself you're going to be removed from the court room. You'll listen to these proceedings in another room. You'll have a chance to hear them and see them on a closed circuit TV set.*

\* \* \*

The Court: Do you have a witness to call, sir? Do you have a witness right now either—

[Appellant]: One witness. (inaudible) and ten before, but [my lawyer] do a job before he bring nobody before that ten. That's why I want—

[Assistant State's Attorney]: Objection, Your Honor.

The Court: All right. Objection sustained. *One more deviation from what I ask you to do and in all due respect to you I'm going to ask the officer to take you into my office where there's a closed circuit TV and you can observe the trial there and you will not be permitted*

*to participate in the trial.* Now, I want to give you an opportunity to participate and if you want that[,] call your witness, either yourself, your wife or anybody else.

[Appellant]: Judge, you don't say to me you are lawyer and you represent yourself.

The Court: Officer, take [appellant] into that room please.

* * *

The Court: All right. [Appellant's now discharged counsel], as a friend of the court, [the prosecutor], counsel for the State, please come up.

(Counsel approached the bench and the following ensued:)

* * *

The Court: And what do you see happening now?

[Assistant State's Attorney]: I see that he's waived his right to present witnesses, you'll instruct the jury, I'll make a closing and since he's not making closing I get no rebuttal.

The Court [to appellant's former counsel]: All right. As a friend to the court do you have anything to add to that?

[Appellant's former counsel]: No, Your Honor. I think that's appropriate.

The Court: All right. Well let's do it.

[Appellant's former counsel]: Thank you.

(Counsel returned to the trial tables and the following ensued:)

The Court: Ladies and gentleman, I have found the applicable Maryland Rule that the Defendant, Mr. Biglari has waived his right to be present in the courtroom because of his conduct. Now, I don't want—and let me just say to you, I don't want you to hold that against him in any respect in regard to the issues that I'm going to be presenting to you in a few minutes and I'm going to repeat that at the end of my instructions to you.

But since he's waived his right to put on or continue his defense, what we're going to do now is proceed to the jury

instructions that I will give you and then the State will give you its closing argument. The State's attorney will give you his closing argument. [Appellant's former counsel] will not give a closing argument because he is no longer representing Mr. Biglari and then the case will be given to you[ ] for your deliberations and your verdict.

The circuit court delivered its jury instructions, the prosecutor delivered a final argument, and the jury returned the verdicts that are at issue.

## Discussion

### I.

■ Appellant argues that the refusal to appoint an interpreter for him deprived him of rights secured by section 1–202 of the Criminal Procedure Article, by the United States Constitution, and by the Maryland Declaration of Rights.[2]

■■ The ability to understand the proceedings is essential to a defendant's right to a fair trial. *Ko v. U.S.*, 722 A.2d 830, 834 (D.C.1998). If a criminal defendant is unable to speak and understand English, an interpreter must be provided to the defendant because a defendant who cannot understand what is being said is not fairly present at trial. *Id.* The court must appoint an interpreter for a criminal defendant who "cannot readily understand or communicate the English language and cannot understand a charge made against the

---

**2.** Some appellate courts have applied the "abuse of discretion" standard of review to the issue of whether the trial court should have appointed an interpreter. *See U.S. v. Coronel–Quintana*, 752 F.2d 1284, 1291–92 (8th Cir.1985)(applying the abuse of discretion standard "[b]ecause the decision to appoint an interpreter will likely hinge upon a variety of factors, including the defendant's understanding of the English language, and the complexity of the proceeding, issues, and testimony, the trial court, being in direct contact with the defendant, should be given wide discretion."); *In re Q.L.J.*, 458 A.2d 30, 31–32 (D.C.1982); *see also Szukiewicz v. Warden of Md. Penitentiary*, 213 Md. 636, 640, 131 A.2d 390 (1957). Under MD CODE (2001), CRIM PROC § 1–202, if a defendant cannot understand English, the defendant "shall" have an interpreter appointed. This statutory mandate requires that we apply the clearly erroneous standard of review to the issue of whether appellant was entitled to an interpreter.

defendant or help present the defense." MD.CODE (2001), CRIM. PROC. § 1–202(a)(2).

The following transpired in the case at bar:

[Appellant's counsel]: So our interpreter has not shown up. That is a problem.

[Assistant State's Attorney]: I will add to that, Your Honor, that on January 28th of 1997 the issue of whether or not an interpreter was needed was heard by [another judge] and that was denied. Now if he needs an interpreter for a matter of convenience I understand. But [another judge] heard the issue completely.

The Court: Is there anything written on that?

[Assistant State's Attorney]: I believe there's a notation in the court folder of the hearing, but he made an oral decision from the bench.

The Court: And what did he base that on?

[Assistant State's Attorney]: He based it on the Defendant's education, on a hearing.

The Court: Education here in this country?

[Assistant State's Attorney]: Education here and in Europe, prior contact—prior review of transcripts from previous hearings where the Defendant was communicating with counsel and communicating with the court and the presentation by the Defendant in the courtroom.

The Court: Well, [Appellant's counsel], how long have you been working with the Defendant?

[Appellant's counsel]: A year, Your Honor.

The Court: And during that year how many conferences have you had with him?

[Appellant's counsel]: Several. One or two.

The Court: All right. *Did he understand what you were saying in this—*

[Appellant's counsel]: *Yes, sir.*

The Court: All right. Well we're going to proceed without an interpreter. Now, we will wait until—unless you can tell me there's some extraordinary reason beyond general com-

munication why we need an interpreter I'm going to proceed without an interpreter. *If the record is that [another judge] has decided that an interpreter is not necessary because of this man's education and language skills and because he's participated in several hearings and also because he's worked with [appellant's counsel], his present lawyer for at least a year which would include obviously talking to him and communicating in English.*

(Emphasis supplied).

The record also shows that appellant's counsel, when addressing appellant's competency a few months prior to trial, stated:

Now, I would like to—the record to be clear that it is not easy communicating with [appellant] for only one reason and [that] is [appellant] speaks—his first language is a Persian language. He's been in this country for a number of years and he speaks English, but he has a very thick accent. *And one needs to be patient and take one's time in listening, but I found when I did that, I was willing and able to do that I had no difficulty in understanding him and he had no difficulty in understanding me. He had no difficulty in telling me if he didn't understand what I was saying and I would rephrase things and explain it in more lay terms, but I in my discussions with him I—it was easy to see that he's an extremely intelligent man.* He is very educated and the only difficulties that we had in communication again resulted from the language problem and it appeared that he had some difficulties understanding what had been happening to him for these past ten years because of cultural differences.

\* \* \*

*I am convinced in my discussions with him that he understands everything with respect to this case, that he can help me in his defense. He does understand what he's charged with. He does understand that he—the various trials he's been through.*

(Emphasis supplied).

■ A judge's decision is not clearly erroneous if the record shows that there is legally sufficient evidence to support it. *State v. Amerman,* 84 Md.App. 461, 472, 581 A.2d 19 (1990); *see also Williams v. State,* 5 Md.App. 450, 458, 247 A.2d 731 (1968). In the case at bar, the record contains ample evidence that appellant could understand and communicate in English, could understand the charges against him, and was capable of helping to present his defense. Under these circumstances, the circuit court did not err in denying appellant's request for an interpreter.

## II.

■ Appellant argues that he was denied his right to effective assistance of counsel because the circuit court erred (1) in finding that appellant did not have a meritorious reason for discharging his counsel, and (2) in proceeding with the trial after appellant discharged his counsel. We hold that appellant made a knowing and voluntary waiver of counsel.

■ In all criminal prosecutions, a defendant has the right to counsel,[3] and the right to self-representation. *Williams v. State,* 321 Md. 266, 270, 582 A.2d 803 (1990). A defendant may exercise the right of self-representation, however, only if he or she knowingly, intelligently, and voluntarily waives the right to counsel. *Parren v. State,* 309 Md. 260, 266, 523 A.2d 597 (1987).

In the case at bar, although it was not required to do so, the court complied in all respects with the requirements of Rule 4–215, which protects the defendant's right to effective assistance of counsel while prohibiting a manipulative defendant from delaying a criminal proceeding by discharging counsel shortly before or during trial. The record shows as follows.

---

**3.** This right is guaranteed by both the Sixth Amendment to the United States Constitution and Article 21 of the Maryland Declaration of Rights.

The circuit court gave appellant an opportunity to explain why he wanted to fire his lawyer. When it found that appellant's reasons were not meritorious,[4] the circuit court told appellant, "I want to give you one more chance to put your reasons for discharging [appellant's counsel] on the record and then I'll rule. Go ahead. That's the rule. You've got to give me reasons because I don't see reasons. Go ahead." After finding that appellant did not have a meritorious reason to discharge counsel, the circuit court read Rule 4–215(e) to appellant, and told appellant that the trial would proceed if counsel was terminated.[5]

Appellant acknowledged that he understood the consequences, stating: "We respect the judge as second God and ask him you be kind for me if you give me different lawyer. *If not is okay.* If your hands tied is okay. I'm going your way. *I'll represent myself.*" After the circuit court again explained the consequences, appellant replied, "[t]hank you judge. *No, I'm going your way exactly what you said. You said I can represent myself.* I can talk about myself."

 "The decision whether to permit mid-trial substitution of counsel *is left to the trial court's discretion.*" *State v. Brown,* 342 Md. 404, 415, 676 A.2d 513 (1996)(emphasis added); *see also State v. Wischhusen,* 342 Md. 530, 543, 677 A.2d 595 (1996). In *Brown,* the Court of Appeals explained that, while Rule 4–215 applies "to early stage decisions to dismiss counsel," strict compliance with the rule is not required once the trial has begun:

---

**4.** We are persuaded that the court gave "careful consideration to the defendant's explanation" for terminating counsel before ruling on the merits of the termination. *Hawkins v. State,* 130 Md.App. 679, 687, 747 A.2d 759(2000).

**5.** The circuit court told appellant, "I have seen nothing that would make me conclude that [your lawyer] is not competent. I see no reason to conclude that and therefore, I'm going to follow the rule and it says again, if the court finds—have a seat please—no meritorious reason . . . the court may not permit [ ] discharge of that lawyer *without first informing the defendant that the trial will proceed as scheduled with the defendant unrepresented.* . . ." (Emphasis supplied).

[R]equiring trial courts to adhere to the Rule throughout trial would present unnecessary and cumbersome procedural obstacles to an efficient trial. For example, if Rule 4–215(e) applied throughout the trial, it would require the court to permit dismissal of counsel if the defendant could demonstrate a meritorious reason, regardless of any countervailing considerations. This interpretation would increase the risk of disruption and jury confusion, consequently increasing the risk of mistrial. Moreover, this view would be contrary to the overwhelming weight of authority, which supports allowing trial courts the discretion to determine whether discharge of counsel should be permitted during trial. For all of the foregoing reasons, we hold that Rule 4–215 applies up to and including the beginning of trial, but not after meaningful trial proceedings have begun.

*Id.* at 427–28, 676 A.2d 513. A mid-trial termination of counsel, however, must satisfy constitutional requirements. *Wischhusen,* 342 Md. at 543, 677 A.2d 595. "Although the litany prescribed by the Rule need not be followed, the trial court must ensure that defendant's decision to waive counsel is made knowingly and intelligently." *Id.*

Based upon our review of the extensive discussion that preceded appellant's discharge of his trial counsel, we are persuaded that (1) appellant made a knowing and voluntary waiver of counsel, and (2) the circuit court neither erred nor abused its discretion in ordering that the trial continue.

## III.

 Appellant argues that the circuit court erred in (1) having appellant removed from the courtroom, and (2) continuing the trial in his absence. A defendant has a right to be present at every stage of the trial. *Collins v. State,* 376 Md. 359, 375, 829 A.2d 992 (2003); *Pinkney v. State,* 350 Md. 201, 208–12, 711 A.2d 205 (1998); Md. Rule 4–231; *see also Stone v. State,* 344 Md. 97, 106, 685 A.2d 441 (1996). This right may

be waived.[6] *Collins,* 376 Md. at 375–76, 829 A.2d 992; *Stone,* 344 Md. at 106, 685 A.2d 441; *Pinkney,* 350 Md. at 210, 711 A.2d 205; Md. Rule 4–231(c). The right to be present is waived by a defendant "who engages in conduct that justifies exclusion from the courtroom." Md. Rule 4–231(c)(1)–(2).

In *Illinois v. Allen,* 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970), the United States Supreme Court stated that a trial judge confronted with a difficult defendant can (1) bind and gag the defendant and keep the defendant in the courtroom; (2) cite the defendant for contempt; or (3) "take him out of the courtroom *until he promises to conduct himself properly.*" *Id.* at 344, 90 S.Ct. 1057 (emphasis added). When the trial court selects the third option, however, the defendant who is removed from the courtroom must be advised of the opportunity to return upon a promise to behave. *See United States v. Nunez,* 877 F.2d 1475, 1478 (10th Cir.1989); *see also Scurr v. Moore,* 647 F.2d 854, 858 (8th Cir.1981); *California v. Booker,* 69 Cal.App.3d 654, 138 Cal.Rptr. 347, 355–56 (1977); *North Carolina v. Sweezy,* 291 N.C. 366, 230 S.E.2d 524, 533–35 (1976).

In *Nunez, supra,* the Tenth Circuit affirmed the conviction of a defendant who was excluded from the courtroom on the fourth day of a twelve day trial. The *Nunez* Court stated:

> In the instant case [Nunez] was given a warning on the first day of trial. On the second day of the trial, when [Nunez] interrupted the trial with loud talk and gesturing, he was removed from the courtroom. On the third day of the trial,

---

**6.** A waiver is generally known as the relinquishment of a known right. *See Wyche v. State,* 53 Md.App. 403, 405, 454 A.2d 378 (1983) (citing *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)). This relinquishment must be intelligent and knowing. *Id.* The intelligent and knowing element will be met if:

> 1. The record expressly reflects that the defendant had a basic understanding of the nature of the right which was relinquished or abandoned; and
> 2. The record expressly reflects acknowledgment that the relinquishment or abandonment of that right was made or agreed to by the defendant.

*Id.* at 406, 454 A.2d 378.

[Nunez] was returned to the courtroom, and the district judge advised him that he would be permitted to remain, but that if there was any further "outburst," he would be excluded from the courtroom for the rest of the trial. [Nunez] declined the offer and asked to be excused and was. At noon on the third day of the trial, the district judge instructed the marshal to inquire whether [Nunez] wanted to return to the courtroom, and [Nunez] refused to talk. On the fourth day of the trial, [Nunez] was allowed to return to the courtroom, but when he interrupted the proceedings again by injecting himself into the proceedings, he was banished for good. And at that time [Nunez] himself indicated that he did not want to be any part of a "burlesque" or "charade," and he did not thereafter indicate any desire to return or testify. The district judge, in our reading of the record, was slow to anger and we find no error in his handling of this matter. [Nunez's] constitutional rights were adequately protected. In the final analysis, it boiled down to whether [Nunez], or the district judge was going to conduct the trial.

*Nunez,* 877 F.2d at 1478.

While pointing out that *Allen* did not require a defendant to be "brought back at least once a day to ascertain whether he would promise to behave properly ...," the *Nunez* Court emphasized that the trial judge protected the defendant's constitutional rights by affording him multiple opportunities to return to the courtroom. *Id.* at 1475. In the case at bar, however, appellant was never given the opportunity to make such a promise.

In *Sweezy, supra,* the Supreme Court of North Carolina affirmed the convictions of a defendant who "broke in on the testimony of other witnesses, accusing one of lying and instructing another to step down before he had completed his testimony. [The defendant] totally ignored the court's repeated admonitions." 230 S.E.2d at 533–34. The appellate court emphasized that the trial judge

expressly warned defendant that his continued interruptions would require his removal. Defendant was so warned on four occasions before he was removed from the courtroom for the first time. The trial judge exercised his contempt powers four times in attempts to control defendant's behavior so that he could remain present throughout the trial.... *He specifically informed defendant that he could return to the courtroom as soon as he decided to conduct himself in a proper manner.*

*Id.* at 534–35 (emphasis added).

In *Booker, supra,* the appellate court held that a trial judge had properly excluded a defendant who announced that he was going to act out during the trial, and who acted violently toward his attorney in open court. 138 Cal.Rptr. at 355. The trial judge repeatedly advised the defendant that he could return to the courtroom when he was able to behave himself. *Id.* The appellate court observed that "the court's promise to let appellant return was given in good faith [was] evidenced [by] both the court's repeated and prolonged urging of appellant to come into the courtroom and cooperate in his trial and the court's allowing him to sit through the penalty phase of the trial when he finally exhibited control." *Id.* at 356.

In *Nunez, Sweezy,* and *Booker,* the defendant was represented by counsel. In the case at bar, appellant's removal from the courtroom left the defense unrepresented during the instructions and closing argument phases of the trial. It is well settled that "the right to present closing argument is a fundamental constitutional right which applies in both jury and non-jury cases, applies equally to *pro se* defendants, and applies even in cases where the evidence appears to be overwhelming." *Holmes v. State,* 333 Md. 652, 658, 637 A.2d 113 (1994). Appellant should have been advised that he would be permitted to deliver a closing argument if he promised to comply with the applicable rules of evidence and criminal procedure.

## Conclusion

Appellant is not entitled to a new trial merely because it was the prosecutor, rather than the circuit court, who first suggested that appellant be removed from the courtroom. Nor is appellant entitled to a new trial merely because he was removed from the courtroom when he refused the command to proceed with his case. Error occurred, however, when appellant was not afforded the opportunity to return to the courtroom upon a promise to behave properly.

While there is no question that the trial judge has broad discretion to control the conduct in his or her courtroom, "[t]rial *in absentia* should be the extraordinary case, 'undertaken only after the exercise of a careful discretion by the trial court.'" *Pinkney,* 350 Md. at 221, 711 A.2d 205 (citation omitted). We are persuaded that, after delivering jury instructions, the circuit court should have (1) sent the jury to the jury room, (2) brought appellant back into the courtroom, (3) advised appellant of his right to take exceptions to the jury instructions, (4) advised appellant that his right to present a closing argument was contingent upon his promise to conduct himself properly, and (5) informed appellant that, if he did promise to conduct himself properly, he could remain in the courtroom for the closing argument phase of the proceedings. We therefore hold that, because the circuit court did not inquire of appellant whether he would "conduct himself properly" during closing arguments,[7] appellant is entitled to a new trial.

**JUDGMENT REVERSED; CASE REMANDED TO THE CIRCUIT COURT FOR BALTIMORE CITY FOR A NEW TRIAL; COSTS TO BE PAID BY THE MAYOR AND CITY COUNCIL OF BALTIMORE.**

---

7. Our holding in this case does not require that a disruptive defendant be given the opportunity to return every time a different witness is called to testify, or every time there is a recess in the proceedings. We are persuaded, however, that such a defendant should be given the opportunity to return whenever a particular phase of the proceedings has concluded (e.g. the State's case-in-chief) and a new phase is about to begin.