**CRIMINAL PROCEDURE - APPOINTMENT OF INTERPRETER**
A trial court's decision to appoint an interpreter is reviewed using a two-part process in which the reviewing court will first examine whether the trial judge's factual findings were clearly erroneous and, if they were not, will next consider whether the trial judge abused his discretion in making the determination regarding whether to appoint an interpreter.

Circuit Court for Montgomery County
Case No. 117923

Argued: March 11, 2014

IN THE COURT OF APPEALS OF

MARYLAND

No. 62

September Term, 2013

GEORGE KUSI

v.

STATE OF MARYLAND

Barbera, C.J.
Harrell
Battaglia
Greene
Adkins
McDonald
Watts,

JJ.

Opinion by Battaglia, J.
Barbera, C.J. and McDonald, J., concur

Filed: May 19, 2014

Section 1-202 of the Criminal Procedure Article, Maryland Code (2001, 2008 Repl.

Vol.) provides for the appointment of an interpreter for a defendant in criminal proceedings

and states:

> **§ 1-202. Interpreters for criminal proceedings.**
>
> (a) *When appointment required.* – The court shall appoint a qualified interpreter to help a defendant in a criminal proceeding throughout any criminal proceeding when the defendant . . .
>
> ***
>
> (2) cannot readily understand or communicate the English language and cannot understand a charge made against the defendant or help present the defense.[1]

Rule 16-819 of the Maryland Rules provides the procedures to determine whether an

interpreter is needed and is at the heart of the issue before us:

> (c) **Procedures to determine the need for interpreters.**
>
> ***
>
> (2) Spoken language interpreter. (A) Examination of party or witness. To determine whether a spoken language interpreter is needed, the court, on request or on its own initiative, shall examine a party or witness on the record. The court shall appoint a spoken language interpreter if the court determines that:
> (i) the party does not understand English well enough to participate fully in the proceedings and to assist counsel, or
> (ii) the party or a witness does not speak English well enough to be understood by counsel, the court, and the jury.

---

[1] Section 1-202 of the Criminal Procedure Article was amended by Chapter 705 of the Maryland Laws of 2012 to renumber the provisions and to add a section providing interpreters for victims. 2012 Md. Laws, Chap. 705.

(B) Scope of examination. The court's examination of the party or witness should include questions relating to:
(i) identification;
(ii) active vocabulary in vernacular English; and
(iii) the court proceedings.

Petitioner George Kusi seeks review of a judgment of the Court of Special Appeals affirming his conviction in the Circuit Court for Montgomery County for sexual abuse of a minor, second degree rape, and third degree sexual offense. The Court of Special Appeals, in an unreported opinion, affirmed the judgment of the Circuit Court and concluded that the trial judge had satisfied the requirements of Maryland Code, Section 1-202(a) of the Criminal Procedure Article and adhered to Rule 16-819(c)(2)(A). Before this Court, Kusi, a native of Ghana who arrived in the United States four years prior to his conviction, alleges that the trial judge abused his discretion in denying him an interpreter for his criminal trial and also argues that the Court of Special Appeals applied a clear error review, which, he asserts, was the wrong standard of appellate review. Kusi petitioned this Court for a writ of certiorari, which was granted. 432 Md. 466, 69 A.3d 474 (2013). In his petition, Kusi presented the following question:

> Did the Court of Special Appeals err in applying a 'clearly erroneous' standard of review to requests for an interpreter, and under the proper standard, was it an abuse of discretion to refuse an interpreter for Petitioner at his jury trial?

We shall hold that appellate review of a trial court's decision to appoint an interpreter is a two-part process in which the reviewing court will first examine whether the trial judge's factual findings were clearly erroneous and, if those findings were not clearly erroneous, the

reviewing court will then consider whether the trial judge abused his discretion in making the determination regarding whether to appoint an interpreter.

With regard to the appointment of an interpreter in this particular case, Section 1-202 of the Criminal Procedure Article, Maryland Code (2001, 2008 Repl. Vol.) required the trial judge to first make factual findings regarding whether Kusi could "readily understand or communicate the English language" and whether he could "understand a charge made against [him] or help present the defense." We shall review the factual findings made by the trial judge utilizing a clearly erroneous standard. Thereafter, the trial judge determined that an interpreter was unnecessary, which we review under an abuse of discretion standard. In the present case, after applying the relevant standards, it is clear that the trial judge acted within his discretion to deny Kusi's request for an interpreter.

On the morning that Kusi's criminal jury trial was scheduled to commence, his attorney notified the trial court for the first time that, one week earlier, Kusi had requested that an interpreter be present at the trial:[2]

---

[2] Generally, pursuant to Rule 16-819(b), requests for an interpreter should be submitted to the clerk of court not less than 30 days before the proceeding. Rule 16-819(b) states:

> (b) **Application for the appointment of an interpreter.**
> A person who needs an interpreter may apply to the court for the appointment of an interpreter. As far as practicable, an application for the appointment of an interpreter shall be (1) presented on a form approved by administrative order of the Court of Appeals and available from the clerk of the court and

(continued...)

| [Defense Counsel]: | I just need to ask the Court maybe to inquire. My client and I have had conversations during the pendency of this case – |
|---|---|
| The Court: | Sure. |
| [Defense Counsel]: | –and we've talked in English and everything. I met with him last week. For the first time he expressed the desire to have an interpreter. |
| The Court: | Really. What language? |
| [Defense Counsel]: | He's Ashanti. There was no line.[3] I contacted the office on Friday to see. What I'm trying to do – |
| The Court: | Could I ask him some questions? |

Kusi was sworn by the court, and the trial judge proceeded to question him regarding his educational level and his use of the English language:

_____

(...continued)

> (2) submitted not less than 30 days before the proceeding for which the interpreter is requested.

In the present case, the State did not challenge the timeliness of the request nor did it assert waiver as an argument. Rather, the State conceded in oral argument that the Rule states that applications for the appointment of an interpreter should be submitted in a timely manner "[a]s far as practicable."

[3] We assume this is a reference to "Language Line," a telephonic interpretation service listed on the Judiciary's website at "Court Language Services," http://www.courts.state.md.us/courts/courtlanguageservices.html (last visited May 15, 2014) and described online at "LanguageLine Solutions," http://www.languageline.com (last visited May 15, 2014).

The Court: [H]ow far did you go in school?

Kusi: My school was (unintelligible), but I learn a lot of language, but I'm not really good in English.

The Court: Well, I didn't ask you that. I asked you how far you went in school. I'll get to that.

Kusi: Middle school.

The Court: I'm sorry?

Kusi: Middle school.

The Court: Middle school.

Kusi: Okay.

The Court: And if I could inquire, where were you born?

Kusi: Born in Ghana.

The Court: In Ghana. Very good. And how old are you, sir?

Kusi: I'm 44 years.

The Court: Forty-four. And when were you born?

Kusi: (No audible response.)

The Court: What year?

Kusi: June 16, 1967.

The Court: 1967. And when did you come to

5

| | |
|---|---|
| | the United States? |
| Kusi: | The date that I come to United States? |
| The Court: | Just the year; I don't need the exact date. |
| Kusi: | It's four years. |
| The Court: | Four years ago? |
| Kusi: | Yeah. |
| The Court: | Okay. Very good. |

The trial court continued to question Kusi regarding what he did for a living and then addressed discussions between Kusi and his attorney:

| | |
|---|---|
| The Court: | And before this all happened, what did you do for a living? |
| Kusi: | I just help my, one of my friend for home improvement so that he give me –<br>                  \*\*\* |
| The Court: | [Y]ou have been represented by [defense counsel] since this case [w]as first brought, is that correct? |
| Kusi: | Yes, sir. |
| The Court: | And have you had meetings with [defense counsel]? |
| Kusi: | Yes. |

6

| | |
|---|---|
| The Court: | [H]ave you told him everything you know about what the State alleges in this case? |
| Kusi: | Yes. |
| The Court: | And has he answered all of your questions? |
| Kusi: | Yes. |
| The Court: | And when you've spoken to [defense counsel], I take it, you have conversed in English, is that right? |
| Kusi: | Yes. |
| The Court: | Very good. And have you had any difficulty understanding what he's telling you? |
| Kusi: | Sometimes, but I put some words at, words down to ask some inmate in the (unintelligible). |
| The Court: | So sometimes there's an idiom he uses that's not clear, right? |
| Kusi: | Yeah. |
| [Defense Counsel]: | I – |
| Kusi: | No, he's clear, but – |
| [Defense Counsel]: | – don't know if you heard what he said. I think he said he put some words down to ask an inmate. |

| | |
|---|---|
| Kusi: | Inmate, yeah. |
| [Defense Counsel]: | There was an occasion when there was another person that helped me talk– |
| The Court: | An investigator or – |
| [Defense Counsel]: | No, no, against my better — |
| [State's Attorney]: | Inmate? |
| [Defense Counsel]: | – another inmate that spoke Ashanti. |
| The Court: | Okay. Very good. And has he answered all of your questions? |
| Kusi: | Yes. |
| The Court: | And are you satisfied that he's listened to what you've had to say? |
| Kusi: | Yes, sir. |

The trial judge then addressed the nature of the proceedings against Kusi:

| | |
|---|---|
| The Court: | And do you know why you're here? |
| Kusi: | Yes, Your Honor. |
| The Court: | Do you understand what you're accused of doing? |
| Kusi: | Yes. |
| The Court: | Believe me, the reason we're having a trial is the State has to prove it. Do you understand that? |

8

| | |
|---|---|
| Kusi: | Yeah. |
| The Court: | You don't have to prove anything. Do you understand that? |
| Kusi: | Okay. |
| The Court: | Yes? |
| Kusi: | Yes. |
| The Court: | You don't have to testify. Do you understand? |
| Kusi: | Okay. |
| The Court: | You don't have to call witnesses. |
| Kusi: | Okay. |
| The Court: | You understand that, yes? |
| Kusi: | Yes. |
| The Court: | In our system, the burden of proof always is on the State. Do you understand that, sir? |

Defense counsel interrupted the dialogue at this juncture to request that the judge vary

the dialogue from asking leading questions, which enabled Kusi to repeatedly answer yes:

> Judge, I know you've been asking him . . . several questions, and he's . . . been acknowledging by saying yes. Because of their leading nature . . . . I'm suggesting maybe a little alternating or something, because it's just the routine of saying yes . . . to Your Honor, the authority, so I just want to make sure, because he's expressed to me not always understanding me, even the second or third time that I've met with him by not

understanding what we talked about before . . . .

The Court responded, "What do you want to do?" and defense counsel continued:

| | |
|---|---|
| [Defense Counsel]: | I want to make sure that he's comfortable doing this in English; that he understands what's going on. I know – |
| The Court: | Absolutely. |
| [Defense Counsel]: | – the prosecutor showed me, and I remember there was an advice of rights form that he acknowledged speaking four different languages partially, at least that's what he's told me, but – |
| The Court: | Well, let me inquire. |
| [Defense Counsel]: | – I just want to make sure he knows – |
| The Court: | Sure. |
| [Defense Counsel]: | – when he hears when you're talking that he understands it. |

The trial judge then began inquiring about Kusi's ability to speak languages other than English:

| | |
|---|---|
| The Court: | Sir, what languages do you speak in whole or in part? |
| Kusi: | I speak Dutch. |
| The Court: | Dutch. Very good. |

10

Kusi:                         That's my language Ashanti.

The Court:                    Yes.

Kusi:                         And Italy language, which is Latin.

The Court:                    Any others? Where did you learn Dutch?

Kusi:                         The Dutch, I'll be in Germany sometimes, and I just pick it up.

The Court:                    How long have you been speaking Dutch?

Kusi:                         Just a year.

The Court:                    Where did you learn English?

Kusi:                         When I came to United States, I started learn, learning English.

The Court:                    So, when you came here four years ago, you started learning English, is that fair, yes?

Kusi:                         Yes.

The Court:                    And you've been able to work in the United States during those four years, is that true?

Kusi:                         Yes.

The Court:                    I'm sorry?

Kusi:                         Yes, Your Honor.

At this point, the judge began to inquire more specifically about what Kusi did for a

living and what he did with the money he earned:

| | |
|---|---|
| The Court: | Tell me a little bit about what you did. |
| Kusi: | For clean the carpet. |
| The Court: | Clean the carpet. |
| Kusi: | And fix the drywalls. |
| The Court: | Drywall. |
| Kusi: | And fix the electrics. |
| The Court: | Electrical work? |
| Kusi: | Yes. |
| The Court: | What other things, sir? |
| Kusi: | I think that's it. |
| The Court: | That's it. And how many years have you been doing it? |
| Kusi: | (Unintelligible) I be here one year, I didn't work for nowhere, but after the three years the only thing that I have been doing to help my friend. |
| The Court: | During this time did you always work for the same company? |
| Kusi: | Yes. |
| The Court: | And what was the name of the company? |

| | |
|---|---|
| Kusi: | Enos Power Clean. |
| The Court: | Very good. And how did you meet up with them? |
| Kusi: | Oh, he, he from Ghana, and is a, a friend of mine introduce me to him. And he know I can work in the street without do anything, so he just take me like that for him to help me (unintelligible). |
| The Court: | Okay. And how many days a week typically would you work? |
| Kusi: | Sometimes, sometime if he having a good job maybe three days, sometimes maybe one week. |
| The Court: | Okay. And how much were you paid? |
| Kusi: | He used to give me two weeks, two weeks he used to give me about $600 or $700. |
| The Court: | Would he pay you in cash or by check? |
| Kusi: | Cash. |
| The Court: | All right. Do you have a bank account? |
| Kusi: | No. |
| The Court: | So, you would just keep the cash, and spend it? |
| Kusi: | No, no, I don't spend it. I just, |

13

because I, before I am (unintelligible), and it doesn't have a good job, so I just help her to pay (unintelligible) that's why –

The judge then explored Kusi's possession of a Maryland driver's license, the test for which Kusi took in French:

| | |
|---|---|
| The Court: | Do you have a driver's license? |
| Kusi: | Yes, Your Honor. |
| The Court: | From what state? |
| Kusi: | From Maryland. |
| The Court: | From Maryland. And I take it you had to take a written exam, a driving test? |
| Kusi: | Yes. |
| The Court: | What language did you take it in? |
| Kusi: | I was (unintelligible), so French. |
| The Court: | You took it in French? |
| Kusi: | Yes. |
| The Court: | And you passed it? |
| Kusi: | Yes. |
| The Court: | Okay. And you've been driving around Maryland, and D.C., and I take — |
| Kusi: | Yeah, D.C., Laurel, Virginia, and – |

14

| | |
|---|---|
| The Court: | Can you read the road signs? |
| Kusi: | Yes. |
| The Court: | Okay. Anybody else have any additional suggestions for me at this time or requests? |

The State's Attorney then interjected to request the court ask a few questions regarding the language Kusi used at home, as well as to request that the trial judge return to the court proceedings colloquy:

| | |
|---|---|
| [State's Attorney]: | Your Honor, just briefly. What language is spoken in the household with the victim and his girlfriend, the victim's mother? |
| The Court: | Sir, when you were living with the child and her mom, did you speak to each other in English? |
| Kusi: | Yes, I tried to pick up from them. |
| The Court: | Okay. And I take it the child speaks English. Is that right? |
| Kusi: | (No audible response.) |
| The Court: | When you spoke to the child, did you speak in English? |
| Kusi: | Yes. |
| The Court: | And when you spoke to the child's mom, did you speak in English? |
| Kusi: | Yes. |

15

| | |
|---|---|
| The Court: | I'm not asking you what you said. I'm staying away from that. I'm just asking the means of communication. Anything else? |
| [State's Attorney]: | My only other concern, Your Honor, is perhaps, we could ask if he's understood what has happened this morning in terms of discussion. We're obviously speaking to him directly, speaking more slowly. |
| The Court: | Let me ask it a little differently. |
| [State's Attorney]: | And keeping up with a trial is a – |
| The Court: | Sure. |
| [State's Attorney]: | – little bit different. Thank you, sir. |
| The Court: | Sir, we are here today to pick a jury. Do you understand that? |
| Kusi: | Yes, Your Honor. |
| The Court: | And I've been going over with your lawyer, and with the State, questions that I'm going to ask potential jurors. Do you understand that? You have to say yes or no. |
| Kusi: | Yes. |
| The Court: | Thank you. The reason we do this is to try to figure out whether any potential jurors are going to be biased before they hear any evidence one way or another. Do you understand that? |

16

| Kusi: | Yes, Your Honor. |
|---|---|
| The Court: | We don't want people starting off the trial leaning one way or another. Do you understand? |
| Kusi: | Yes. |
| The Court: | The purpose is to get as neutral a jury as possible, understanding that everybody has opinions about things. Do you understand? |
| Kusi: | (Unintelligible.) |
| The Court: | All right. Do you have any questions you'd like to ask me, sir, about what we're doing, how we're doing it, procedural things? I'll answer them. |

Before stating his findings on the record and ultimately denying Kusi's request for an interpreter, the trial judge reminded Kusi that Kusi could stop the proceedings at any point if he did not understand what was happening:

| The Court: | Sir, if at any time you don't understand what's going on, tell [defense counsel], and he'll tell me, okay? |
|---|---|
| Kusi: | Okay. Thank you. |
| The Court: | I won't get mad. I won't get upset. I mean it. |
| Kusi: | Okay. |

17

| | |
|---|---|
| The Court: | If something is confusing you, or if you don't – understanding you're not a lawyer, but if you have a question, tell him. You can tell me directly, but if you're more comfortable, you can just tell him. |
| Kusi: | Okay. |
| The Court: | He's not shy. He'll let me know. Okay? |
| Kusi: | Okay. |
| The Court: | And we'll either do it again, or we'll slow things down, or we'll figure out a better way to do it. Okay? |
| Kusi: | Okay. |
| The Court: | There's no rush. |
| [Defense Counsel]: | I would like to ask him one question. |
| The Court: | Sure. |
| [Defense Counsel]: | Do you remember when we talked last week? We talked last week, remember? |
| Kusi: | (No audible response.) |
| [Defense Counsel]: | I came, and we sat down, and I talked with you last week, do you remember? |
| Kusi: | Yeah, I talked to you last week. |
| [Defense Counsel]: | Right. And you asked me to get an |

18

interpreter for you.

Kusi:                        Yeah.

[Defense Counsel]:           Why?

Kusi:                        Because I wanted to understand everything that he's talking about. That's why I say having the interpreter. I think I'm gonna be fine.

[Defense Counsel]:           Okay.

The Court:                   All right. Sir, but I really mean this. If at any time something happens, and you're not sure what just happened, let [defense counsel] know, and we'll figure out how to make sure that you fully understand whatever it was that you may have had a question about, okay?

Kusi:                        Okay.

The Court:                   There's no rush. Nobody's in a hurry, and we're going to take whatever amount of time we need to take, okay? I mean it. I know it's important; I really do.

The judge then made various factual findings, as well as a determination that Kusi did not need an interpreter:

I am satisfied that the defendant understands the nature of the proceeding. I find that he is able to communicate cogently with his counsel. I find that he is able to discuss with his counsel in English the facts of the case. I find that he's able to discuss with his counsel in English the legal strategies to be

19

employed. I find that he understands as much as any civilian would understand the process of jury selection. **And I find that he is able to proceed in this matter without the aid of an interpreter.**

   If anything changes, somebody let me know, and I will revisit my findings, and, if necessary, make whatever accommodation needs to be made. Okay? . . .

(Emphasis added.)

It is the language embodying the trial judge's determination that is couched as a finding that sparks, in part, the controversy before us, in addition to the methodology employed by the judge.

Before us, Kusi argues that the trial judge erred when he determined not to appoint an interpreter during his trial. Kusi also contends that the Court of Special Appeals applied the wrong standard of review when it reviewed the judge's determination, having embraced clear error review. Kusi argues that abuse of discretion is the appropriate standard of review, because the appointment of an interpreter is "a 'reasoned decision based on the weighing of various alternatives.'" (Petitioner's brief at 22, *quoting Judge v. R and T Construction Co.*, 68 Md. App. 57, 60, 509 A.2d 1236, 1237 (1986)). Kusi's counsel at oral argument reasoned that were the correct standard for the determination to be used in review that we would reverse and remand because the trial judge did not adhere to the recommendation contained in the Committee Note appended to Rule 16-819, which states:

> **Committee note.** – Examples of matters relating to identification are: name, address, birth date, age, and place of birth. Examples of questions that elicit active vocabulary in vernacular English are: How did you come to court today? What

kind of work do you do? Where did you go to school? What was the highest grade you completed? What do you see in the courtroom? Examples of questions relating to the proceedings are: What do you understand this case to be about? What is the purpose of what we are doing here in court? What can you tell me about the rights of the parties to a court case? What are the responsibilities of a court witness? Questions should be phrased to avoid "yes or no" replies.

Kusi's argument also relies on the word "shall" as used in Section 1-202 of the Criminal Procedure Article, Maryland Code (2001, 2008 Repl. Vol.) which mandates that courts "shall appoint a qualified interpreter" when the defendant cannot readily understand or communicate in English because, he contends, the court was obligated to appoint him an interpreter.

The State argues that the trial judge's lengthy colloquy with Kusi supports the trial judge's factual findings and that, even under an abuse of discretion standard, his determination that there was no need for an interpreter should be affirmed. The State posits, though, that the clearly erroneous standard of review is the appropriate standard to apply because, according to the State, the court's inquiry in determining whether to appoint an interpreter necessarily involves a factual finding.

The Court of Special Appeals, in an unreported opinion, affirmed the judgment of the Circuit Court. The Court of Special Appeals rejected the State's argument, which the State has abandoned before this Court, that Kusi's statement indicating that he was "gonna be fine" represented an affirmative waiver. The intermediate appellate court did agree, however, with the State that "it was incumbent upon [Kusi] to let the court know if there came a point

21

during trial when [Kusi] could not understand the proceedings." The intermediate appellate court referenced its earlier decision in *Biglari v. State*, 156 Md. App. 657, 665 n. 2, 847 A.2d 1239, 1244 n.2 (2004), in which the court announced that "[the] statutory mandate [of Section 1-202 of the Criminal Procedure Article] requires that we apply the clearly erroneous standard of review to the issue of whether [a defendant] was entitled to an interpreter." As the *Biglari* court explained the clearly erroneous standard, "[a] judge's decision is not clearly erroneous if the record shows that there is legally sufficient evidence to support it." *Id.* at 668, 847 A.2d at 1245.

The intermediate appellate court noted that the trial judge had "engaged in an extensive colloquy" with Kusi and held that "the judge was not clearly erroneous in finding that [Kusi] understood the English language well enough to participate meaningfully in the proceedings" and that the trial "court's determination concerning appellant's need for an interpreter was not clearly erroneous." The Court of Special Appeals concluded that the trial judge had satisfied the requirements of Maryland Code, Section 1-202(a) of the Criminal Procedure Article and had fulfilled the dictates of Rule 16-819(c)(2)(A).

The history of Rule 16-819 and our recent jurisprudence regarding appointment of an interpreter do not assist us in answering the ultimate question of when an interpreter should be appointed by the court or what is the correct standard of review to employ. Our most recent cases involving interpreters, *Gonzalez v. State*, 429 Md. 632, 57 A.3d 484 (2012) and *Kang v. State*, 393 Md. 97, 899 A.2d 843 (2006), address different questions. In *Gonzalez*,

this Court confronted the admissibility of incriminating statements made by a defendant who claimed, due to the lack of an interpreter, he did not understand the *Miranda* warnings he was given. While the *Gonzalez* opinion aptly demonstrates this Court's reluctance to second guess the factual findings of a trial court, it does not address the standard of review applicable to requests for an interpreter.[4] Likewise, in *Kang,* an interpreter had been

---

[4] Of note, in the *Gonzalez* opinion is this Court's indication that it would "defer to the motion court's factual findings and uphold them unless they are shown to be clearly erroneous." *Gonzalez*, 429 Md. 632, 647, 57 A.3d 484, 493 (2012). The Court's inquiry in *Gonzalez* focused not on the adequacy of the *Miranda* warnings given, but rather on the trial court's acceptance of testimony from a trooper explaining his belief that the defendant had understood the warnings. This Court explained that:

> In evaluating the adequacy of the warnings issued by [the trooper], we begin with a crucial credibility determination made by the suppression court. The court stated that it "believe[d] the testimony of [the trooper] to be both truthful and persuasive." That credibility determination is virtually unassailable. Consequently, we, as the reviewing court, must accept as fact (as obviously did the suppression court) [the trooper's] testimony concerning his impressions of Petitioner's comprehension of not only the Spanish language, but also the trooper's phonetic pronunciation of the Mixtec words for "court" and "attorney." Indeed, the suppression court found that Petitioner "could sufficiently understand Spanish in order to waive his rights under *Miranda*." Implicit in that finding, moreover, is the suppression court's predicate (albeit unexpressed) finding that Petitioner sufficiently comprehended the *Miranda* warnings so as to enable him to make a valid waiver of the rights described therein.

*Id.* at 652-53, 57 A.3d at 496.

As we shall address *infra*, a focus on the trial court's factual determination is likewise controlling in this case.

(continued...)

23

appointed by the trial court and the appointment was not challenged in this Court.  Rather,

this Court assessed Kang's claims that untranslated portions of the proceedings had unfairly

impacted his waiver of a jury trial and, like our decision in *Gonzalez*, we relied upon the

record to determine that a "jury trial waiver was likely not the result of language deficiency"

and indicated that we were "satisfied that [the defendant] had an opportunity to understand

and participate in his criminal proceedings."  *Kang*, 393 Md. at 118, 899 A.2d at 855.

Before we address the ultimate question of whether an interpreter should have been

appointed by the trial judge, we must address just how we review his decision.  Maryland

Rule 8-131 generally defines the scope of appellate review and subsection (c) describes the

standards applied when an action has been tried without a jury:

> **Rule 8-131. Scope of review.**
>
> (c) **Action tried without a jury.** When an action has been tried without a jury, the appellate court will review the case on both the law and the evidence.  It will not set aside the judgment of the trial court on the evidence unless clearly erroneous, and will give due regard to the opportunity of the trial court to judge the credibility of the witnesses.

Unlike the dichotomy presented in the instant case between application of the clearly

erroneous standard of review and that of abuse of discretion, we have acknowledged that

Rule 8-131(c) does not always require a solitary standard of review, but rather there are often

"interrelated standards" applicable. *In re Adoption/Guardianship of Victor A.*, 386 Md. 288,

___

(...continued)

24

297, 872 A.2d 662, 667 (2005). For example, we have articulated "three distinct aspects of review in child custody disputes." *In re Yve S.*, 373 Md. 551, 586, 819 A.2d 1030, 1051 (2003), *quoting Davis v. Davis*, 280 Md. 119, 125, 372 A.2d 231, 232-33, *cert. denied*, 434 U.S. 939, 98 S.Ct. 430, 54 L.Ed.2d 299 (1977). *See also Robinson v. Robinson*, 328 Md. 507, 513, 615 A.2d 1190, 1193 (1992); *McCready v. McCready*, 323 Md. 476, 484, 593 A.2d 1128, 1131 (1991); *Domingues v. Johnson*, 323 Md. 486, 492 n. 2, 593 A.2d 1133, 1136 n.2 (1991) ("A chancellor's decision founded upon sound legal principles and based upon factual findings that are not clearly erroneous will not be disturbed in the absence of a showing of a clear abuse of discretion.").

It is also common for appellate courts to employ a two-tier standard of review, first applying a clearly erroneous standard to the judge's factual findings before reviewing a judge's legal determination under an abuse of discretion standard. *See, e.g., Falls Rd. Community Ass'n, Inc. v. Baltimore County*, 437 Md. 115, 135, 85 A.3d 185, 197 (2014) ("The trial court's evaluation of the evidence is reviewed under a clearly erroneous standard . . . . A court's decision to grant or deny declaratory relief is generally assessed under an 'abuse of discretion' standard."); *State v. Walker*, 345 Md. 293, 325, 691 A.2d 1341, 1356 (1997) ("Some of the subsidiary determinations made by a trial court in arriving at its findings and conclusions may well be purely factual or discretionary ones, and, as to them, we will continue to apply a clearly erroneous or abuse of discretion standard.")

Because the trial judge in this case, as required by Rule 16-819, first made factual

25

findings concerning Kusi's ability to use the English language, the first tier of review in this case involves an examination of the trial judge's factual findings using the clear error standard. We will give deference to the trial court's factual findings, while still reviewing those findings for clear error, because we give "'due regard to the opportunity of the trial court to judge the credibility'" of the evidence. *City of Bowie v. MIE Properties*, 398 Md. 657, 676, 922 A.2d 509, 521 (2007), *quoting* Maryland Rule 8-131(c); *Colandrea v. Wilde Lake Cmty. Ass'n*, *Inc.* 361 Md. 371, 394, 761 A.2d 899, 911 (2000); *Murphy v. 24th St. Cadillac Corp.*, 353 Md. 480, 497, 727 A.2d 915, 923-24 (1999). As this Court has previously stated, "A finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Goodwin v. Lumbermens Mut. Cas. Co.*, 199 Md. 121, 130, 85 A.2d 759, 763 (1952) (internal quotations omitted). Judge Wilner expounded on the concept of clear error review in *Attorney Grievance v. Maignan*, 390 Md. 287, 295, 888 A.2d 344, 349 (2005), explaining that the Court will only overturn a trial judge's factual finding if, for example, a document in evidence "belies the judge's finding," rendering that factual finding "fundamentally and clearly erroneous." He noted that:

> It is true, as we have indicated, that credibility decisions made by a hearing judge are ordinarily entitled to deference, but . . . not when the credibility decision is so contrary to unexplained, unimpeached, unambiguous documentary evidence as to be inherently incredible and unreliable. If the check admitted into evidence was blue in color, and we could see it was blue in color, we certainly would not accept the judge's

26

crediting of the office manager's testimony that it was yellow.

*Id.*

Applying the clearly erroneous standard of review to the present case, it is evident that the trial judge did not commit clear error when he found that Kusi could "understand[] the nature of the proceeding," "discuss with his counsel in English the facts of the case," and "understand[] as much as any civilian would understand the process of jury selection." The trial judge had an opportunity firsthand to hear Kusi speak English during the lengthy process, and the judge also asked a number of questions that revealed the amount of education Kusi had received, the jobs he had worked in the U.S., and his use of English in his home. Kusi's answers to these questions revealed that his knowledge of the English language was thorough enough to allow him to proceed without an interpreter.

After the trial judge made the factual findings that Kusi "understands the nature of the proceedings" and was "able to communicate cogently with his counsel," the trial judge next stated, "I find that [Kusi] is able to proceed in this matter without the aid of an interpreter." Although the trial judge used language indicating that this statement was a "finding," the statement was the legal determination that the trial judge reached when he applied Maryland Rule 16-819 to the facts found. We have stated that the clearly erroneous standard "does not apply to a trial court's determinations of legal questions or conclusions of law based upon findings of fact." *In re Yve S.,* 373 Md. at 585, 819 A.2d at 1050; *see also Nesbit v. GEICO*, 382 Md. 65, 72, 854 A.2d 879, 883 (2004); *Rohrbaugh v. Estate of Stern*, 305 Md. 443, 446-47 n. 2, 505 A.2d 113, 115 n.2 (1986); *Elza v. Elza*, 300 Md. 51, 55-56, 475 A.2d 1180, 1182

27

(1984). Rather, where a trial court makes a discretionary ruling, such as the determination of whether or not to appoint an interpreter, we apply an abuse of discretion standard of review.

There are a "multitude of varying definitions of 'abuse of discretion,'" *Alexis v. State* 437 Md. 457, 87 A.3d 1243 (2014). It is nevertheless clear that "a ruling reviewed under an abuse of discretion standard will not be reversed simply because the appellate court would not have made the same ruling." *Id., quoting North v. North*, 102 Md. App. 1, 14, 648 A.2d 1025, 1031-32 (1994). We previously have defined it as:

> We have defined abuse of discretion as "discretion manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons." *Jenkins v. City of College Park,* 379 Md. 142, 165, 840 A.2d 139, 153 (2003) (emphasis not included). *See also Garg v. Garg*, 393 Md. 225, 238, 900 A.2d 739, 746 (2006) ("'The abuse of discretion standard requires a trial judge to use his or her discretion soundly and the record must reflect the exercise of that discretion. Abuse occurs when a trial judge exercises discretion in an arbitrary or capricious manner or when he or she acts beyond the letter or reason of the law.'") (*quoting Jenkins v. State,* 375 Md. 284, 295-96, 825 A.2d 1008, 1015 (2003) . . .).

*Touzeau v. Deffinbaugh*, 394 Md. 654, 669, 907 A.2d 807, 816 (2006). When the trial court exhibits a clear "failure to consider the proper legal standard in reaching a decision," such an action constitutes an abuse of discretion. *Neustadter v. Holy Cross Hosp. of Silver Spring*, 418 Md. 231, 242, 13 A.3d 1227, 1233-34 (2011), *quoting Aventis Pasteur, Inc. v. Skevofilax,* 396 Md. 405, 433, 436, 914 A.2d 113, 130 (2007).

Abuse of discretion is not limited solely to those occurrences when a trial court

misapplies a legal standard. A trial court also abuses its discretion when:

> '. . . no reasonable person would take the view adopted by the
> [trial] court[]'. . . or when the court acts 'without reference to
> any guiding rules or principles.' An abuse of discretion may also
> be found where the ruling under consideration is 'clearly against
> the logic and effect of facts and inferences before the court[]'
> . . . or when the ruling is 'violative of fact and logic.'

*Wilson v. John Crane, Inc.*, 385 Md. 185, 198, 867 A.2d 1077, 1084 (2005), *quoting In re Adoption/Guardianship No. 3598*, 347 Md. 295, 312, 701 A.2d 110, 118-19 (1997) (citations omitted). We also have said that the trial court abuses its discretion when, "'no reasonable person would take the view adopted by the court." *In re Adoption/Guardianship No. 3598,* 347 Md at 312, 701 A.2d at 118, *quoting North v. North*, 102 Md. App. 1, 13, 648 A.2d 1025, 1031 (1994). A reviewing court may also find an abuse of discretion when "the ruling under consideration is 'clearly against the logic and effect of facts and inferences before the court . . . or when the ruling is 'violative of fact and logic." *Id.* (citations omitted).

Under any of our articulations, the trial judge did not abuse his discretion when he denied the appointment of an interpreter in the instant case. His extended colloquy and his factual findings support his determination that an interpreter was not needed at Kusi's trial. Rule 16-819(c)(2)(B) specifically indicates that a "court's examination" should include questions relating to a defendant's "identification," "active vocabulary in vernacular English," and "the court proceedings." The trial judge's factual findings show that he had examined Kusi regarding each of these areas described in the Rule and that the judge's ultimate conclusion was clearly based on the finding that Kusi could understand. The record

29

clearly demonstrates that the trial judge was attempting to ascertain, in compliance with the Rule, whether Kusi spoke English "well enough to participate fully in the proceedings and to assist counsel," Rule 16-819(c)(2)(i), and in so doing, did not abuse his discretion.

Finally, although Kusi argues that the statutory language of "shall" in Section 1-202(a) of the Criminal Procedure Article requires the appointment of an interpreter when requested by the defendant, it is clear that the obligatory language only applies when the statutory precondition is met. With respect to the appointment of an interpreter, the statutory precondition is a factual finding that the criminal defendant is unable to understand and communicate readily in English.

Kusi also asserts that the Committee Note to Rule 16-819, which gives courts "[e]xamples of questions that elicit active vocabulary in vernacular English" and "[e]xamples of questions relating to the proceedings," also directs that, "[q]uestions should be phrased to avoid 'yes or no' replies." While the Note advises, it is not binding, because it is not part of the Maryland Rules. *See* Maryland Rule 1-201(e) ("committee notes . . . are not part of these rules"). As this Court has previously stated, "the Committee Note following the Rule lay[s] out the kinds of things a court *may* do." *See, e.g., Arrington v. Department of Human Resources*, 402 Md. 79, 104-05, 935 A.2d 432, 448 (2007) (emphasis in original); *see also Bijou v. Young-Battle*, 185 Md. App. 268, 288, 969 A.2d 1034, 1046 (2009) ("committee notes . . . are not part of [the Maryland] Rules"). The Note does not impose a *per se* requirement that the questions asked must follow a certain rubric.

30

The trial judge in this case made extensive findings based on a lengthy colloquy which included multiple open-ended questions directed to the defendant.  While it may be that the trial judge could have asked more open-ended questions relating to the defendant's comprehension of courtroom procedures, it is nonetheless clear that the trial judge elicited enough information from the defendant to make factual findings that Kusi understood "English well enough to participate fully in the proceedings and to assist counsel," which did not constitute clear error.  The legal determination that Kusi was, therefore, not entitled to the appointment of an interpreter under either Section 1-202 of the Criminal Procedure Article or Maryland Rule 16-819 was not an abuse of discretion.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS TO BE PAID BY PETITIONER.**

31

Circuit Court for Montgomery County
Case No. 117923
Argued: March 11, 2014

IN THE COURT OF APPEALS
OF MARYLAND

No. 62

September Term, 2013

GEORGE KUSI

v.

STATE OF MARYLAND

Barbera, C.J.
Harrell
Battaglia
Greene
Adkins
McDonald
Watts,

JJ.

Concurring Opinion by McDonald, J., which
Barbera, C.J., joins.

Filed: May 19, 2014

I concur in the judgment, but do not join the Court's opinion. While I agree with the outcome of the case, I do not understand the Court's use of multiple standards of review in this context. In particular, I do not believe that an "abuse of discretion" standard need be overlaid on the "clearly erroneous" standard that the Court also applies.

The relevant statute and rule require the appointment of an interpreter for a defendant in specified circumstances.[1] In particular, the relevant statute provides, in pertinent part:

> (a) The court **shall appoint** a qualified interpreter to help a defendant ... when the defendant ...
>
> (2) Cannot readily understand or communicate the English language and cannot understand a charge ... or help present the defense.

Maryland Code, Criminal Procedure Article ("CP"), §1-202(a) (emphasis added). Similarly, the related court rule provides, in pertinent part:

> The court **shall appoint** a spoken language interpreter if the court determines that:
>
> (i) the party does not understand English well enough to participate fully in the proceedings and to assist counsel, or
>
> (ii) the party ... does not speak English well enough to be understood by counsel, the court, and the jury.

---

[1] Although neither the Supreme Court nor our Court has announced a constitutional right to the appointment of an interpreter, these provisions appear designed to satisfy the constitutional bases for such a right. *See Biglari v. State,* 156 Md. App. 657, 665, 847 A.2d 1239, *cert. denied*, 382 Md. 686 (2004) ("[t]he ability to understand the proceedings is essential to a defendant's right to a fair trial"); *United States ex rel. Negron v. New York*, 434 F.2d 386, 389 (2d Cir. 1970) (due process, the Sixth Amendment right of confrontation, and the right to be present at one's own trial required appointment of interpreter for a defendant who did not speak or understand English).

Rule 16-819(c)(2)(A) (emphasis added).[2]

As is evident, both CP §1-202 and Rule 16-819 state that a trial court "shall appoint" an interpreter for the defendant if the court finds that certain circumstances exist – for example, that the defendant does not readily understand English or does not speak it well enough to be understood by the jury. If those circumstances exist, the court has *no discretion* – it must appoint an interpreter. Whether the predicate circumstances exist is a factual determination made by the trial court. As is generally the case, a trial court's fact findings are reviewed by an appellate court under a "clearly erroneous" standard. *See Biglari*, 156 Md. App. at 665-68 & n. 2.

The Majority opinion appears to agree with the reasoning above. *See* Majority slip op. at pp. 26-28. But the Majority opinion then goes on to add an "abuse of discretion" standard as well. *See* Majority slip op. at pp. 28-30 . The Majority opinion does not indicate what legal provision compels an exercise of discretion by the trial court and what, if any, criteria exist for measuring the exercise of that discretion – apart from the criteria in CP §1-202 and Rule 16-819, which do not accord the trial court *any* discretion if the factual predicate for appointment of an interpreter is established.[3] The introduction of this standard

---

[2]As the Majority opinion notes, Rule 16-819 also sets forth the procedure a trial court should follow to determine whether the predicate factual circumstances exist. I have no quarrel with the Majority's assessment of the trial court's compliance with those procedures. Majority slip op. at pp. 30-32.

[3]I suppose that we might say that a trial court has "discretion" to appoint an interpreter even if the appointment is not compelled by CP §1-202 or Rule 16-819, but it is difficult to

(continued...)

2

of review, untethered to CP §1-202, Rule 16-819, or any other legal provision, has the

potential to sow confusion.[4]

       Chief Judge Barbera joins this opinion.

---

[3](...continued)
imagine how that decision would be subjected to review under an "abuse of discretion" standard. Presumably, the defendant would not object to that assistance.

[4]If it were contended that a trial court misinterpreted the requirements of CP §1-202 or Rule 16-819, our review would not accord the trial court's legal interpretation any deference – that is, we would not apply an "abuse of discretion" standard, but would review the trial court's legal determination *de novo.*